BURGESS (BABBITT v.). See Case No. 693.
BURGESS (BUCKINGHAM v.). See Cases Nos. 2,088 and 2,089.

## Case No. 2,154.

### BURGESS et al. v. CONVERSE.

[2 Curt. 216.] [1]

Circuit Court, D. Massachusetts. May Term, 1855. [2]

CUSTOMS DUTIES—PROTEST—SUFFICIENCY—APPRAISEMENT.

1. Though defects in the collector's proceedings in the assessment of duties appear in the course of the proof which he offers, they cannot avail the plaintiff unless he has relied on them in his protest.

2. If the proceedings of the government appraisers are not in conformity to law, the importer may refuse to pay by reason of such defects, pointing them out in his protest; but if he claim an appeal to merchant appraisers, and their proceedings are regular, the defects in the proceedings of the government appraisers are immaterial.

[Cited in Yznaga v. Peaslee, Case No. 18,196.]

3. Both the government and merchant appraisers are required by law to open and examine at least one package in every ten packages of the invoice to be appraised; and if the jury find that this was not, in substance and effect, done, the appraisement is void.

[Cited in Ystalifera Iron Co. v. Redfield, 23 Fed. 651.]

4. Under a protest, which alleges that "the goods were not fairly and faithfully examined," the importer may rely on the failure of the appraisers to examine one package in ten of the invoice.

[5. Cited in Arthur v. Morgan, 112 U. S. 501, 5 Sup. Ct. 244: Davies v. Arthur, 96 U. S. 151; Frazee v. Moffit, 18 Fed. 586; and Herman v. Schell, Id. 892,—to the point that a protest is not required to be made with technical precision. but is sufficient if it show fairly that the objection afterwards made at the trial was in the mind of the party, and was brought to

the knowledge of the collector, so as to secure to the government the practical advantage which the statute (Act Feb. 26, 1845, c. 22; 5 Stat. 727) was designed to secure.]

[At law. Action by Benjamin Burgess, Nathan B. Gibbs, and Benjamin F. Burgess against James C. Converse, administrator of Philip Greely, deceased, late collector of the port of Boston, to recover back duties alleged to have been illegally exacted. Verdict for plaintiffs.]

Mr. Andros, for plaintiffs.
Mr. Hallett, Dist. Atty., contra.

CURTIS, Circuit Justice. This is an action against the administrator of a late collector of the port of Boston, to recover money alleged to have been illegally exacted in payment of duties. At the trial, the plaintiffs offered evidence to show, that in April, 1850, they imported into Boston from Cuba one hundred and sixty-five hogsheads and one barrel of sugar, and declared the value thereof on entry to be $6,496.67; that the government appraisers, having appraised the market value thereof at a greater sum, the plaintiffs took an appeal to merchant appraisers, who having appraised the sugars at more than ten per centum above the declared value, the ad valorem duty was cast on that appraised value, and a penalty of twenty per centum on the appraised value was added, that the plaintiffs paid this duty and penalty, but previously protested against the payment, in writing, assigning the ground of the protest as follows: "All of which we protest against, on the ground of fair valuation in the invoice; and that the goods were not fairly, or faithfully examined by the appraisers." The returns made by the government and merchant appraisers, and the oath taken by the latter, having been put in evidence, the plaintiffs made sundry objections to the qualifications of the appraisers, and the form of their returns; but the court was of opinion that none of these grounds was open to the plaintiffs under this protest. It has now been argued that, inasmuch as these proceedings were necessary to the defence of the collector, and were part of his case, any objection apparent on the face of the papers when produced, and which shows that his proceedings were not warranted by law, may be taken when the papers are produced, though not pointed out in the protest. This would clearly be so, if it were not for the act of congress of February 26, 1845 (5 Stat. 727), which enacts: "Nor shall any action be maintained against any collector, to recover the amount of duties so paid under protest, unless the said protest was made in writing, and signed by the claimant, at or before the payment of the said duties, setting forth, distinctly and specifically, the grounds of objection to the payment thereof." Under this act it has heretofore been held by this court to be necessary to set forth, in the protest, every ground of

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]
[2] [Affirmed in Converse v. Burgess, 18 How. (59 U. S.) 413.]

objection to the payment protested against; and, as a necessary consequence, no ground can be taken at the trial, which does not there appear. Kriesler v. Morton [Case No. 7,933]; Norcross v. Greely [Id. 10,294]; Swanston v. Morton [Id. 13,677]. In the first of these cases, it appeared on the return of the appraisers, that the valuation was made, as of the time of exportation, the then existing law requiring it to be, as of the time of purchase. But the court refused to allow the plaintiff to take the objection, because it was not set forth in the protest. This disposes of all the objections made by the plaintiffs to the proceedings in question, save those which relate to the conduct of the appraisers in making the appraisements.

The plaintiffs offered to prove that one of the government appraisers did not see the goods at all, and that none of the appraisers saw or examined any package, but only some samples, drawn about the 26th of April, examined by one of the government appraisers on the 14th of May, and by the merchant appraisers on the 14th of June; and they propose to show, that this exposure of the samples would make a material improvement in their quality.

The question is, whether, under a protest setting forth as the ground of objection, that the appraisers did not fairly or faithfully examine the goods, this evidence was admissible, and if so, what would be its effect? All intention to impute fraud to either set of appraisers was disclaimed. As respects the conduct of the government appraisers, or if this case turned thereon, I should find no difficulty in holding that the plaintiffs would be entitled to recover. For, though by the act of March 3, 1851, § 2 (9 Stat. 630), the certificate of any one appraiser of the United States was made sufficient, the appraisement in question was made before the passage of this law; and under the former act of 1842 (5 Stat. 563), it was necessary, to the validity of the appraisement that both appraisers should see and examine the goods. Greely v. Thompson, 10 How. [51 U. S.] 225. I should consider also that under a protest which set forth that the appraisers did not faithfully examine the goods, it would be competent to prove that one of them did not see the goods at all. But, in my judgment, all this became immaterial, by reason of the appeal taken to the merchant appraisers. My construction of the 17th section of the tariff act of 1842 (5 Stat. 564) is, that if the importer takes an appeal to merchant appraisers, he is bound by their appraisement, if regular, and cannot avoid the whole proceeding, by showing an irregularity in the proceedings of the government appraisers. I deduce this construction, first, from the language of the law; which declares that the appraisement made by the merchant appraisers, in conformity with the directions of the act. "shall be final, and deemed and taken to be the true value of the goods, and the duties shall be levied

thereon accordingly, any act of congress to the contrary, notwithstanding." But if the importer, after such an appraisement, were permitted to show he was not bound because of an irregularity in the appraisement of the government appraisers, then the appraisement of the merchant appraisers, though strictly in conformity to law, would not be binding. This would, in effect, introduce into the act, after the declaration of the finality of the action of the merchant appraisers, a proviso not found there, namely, provided the proceedings of the government appraisers were in conformity to law. There is certainly nothing in the language of the act to warrant the interpretation of such a proviso, nor is there any thing in the nature of the proceeding, or the objects contemplated by the act, which call for, or would justify it.

The call by the importer, for the second appraisement, on account of his dissatisfaction with the first, is in the nature of an appeal; and there seems to be no good reason why, in such a case, the errors which have affected the first appraisement, which is superseded and rendered wholly immaterial by the appeal to the merchant appraisers, should be afterwards relied on, or allowed to have any effect.

It is argued, that the importer is obliged to take an appeal, if dissatisfied for any cause, and that he is entitled to two regular proceedings, and to the fair judgment of both sets of appraisers thereon. I consider him entitled to have both proceedings regular, but I do not think he is bound to take an appeal, if the government appraisers have not proceeded in conformity with the authority conferred on them by law. In my judgment, he may and should, in such a case, make his protest, and point out the irregularity, or departure from the law, and stand upon it, as the ground of refusal to pay the increased duty, and in such a case, the collector would not be justified in exacting the increased duty, by an illegal assignment. But if he demands a re-appraisement, and that is regular, he waives all objection to the first, which is superseded and rendered unimportant by the second, on which the law, in terms, requires the collector to proceed, as final and binding. The objections to the proceedings of the government appraisers are, therefore, immaterial in this case. But I am of opinion, the proceedings of the merchant appraisers were not conformable to law, upon the facts offered to be proved by the plaintiffs.

It was offered to be proved, that they did not examine any package of the goods, but only some samples drawn by others. The 21st section of the act of 1842 (5 Stat. 565) enacts, "That the collector shall designate on the invoice, at least one package of every invoice, and one package, at least, of every ten packages of goods, wares, or merchandise, and a greater number, should he or either of the appraisers deem it necessary,

imported into such port, to be opened, examined, and appraised, and shall order the package or packages so designated, to the public stores for examination; and if any package shall be found by the appraisers to contain any article not specified in the invoice, and they, or a majority of them shall be of opinion, &c." It is insisted by the district attorney, that this is merely directory to the collector, for the protection of the revenue from fraud. No doubt this was one purpose, and I think the leading purpose of the section. But can I say it was its sole purpose? The sixteenth section of this act, makes it the duty of the collector, "by all reasonable ways and means in his power, to ascertain, estimate, and appraise the true and actual market value and wholesale price, &c." This is the general purpose, the real end to be attained; and the entire machinery of government and merchant appraisers, and the powers conferred on them, are all for this end. It was not intended or desired by congress merely to protect the revenue by preventing undervaluation. They meant also to protect the fair trader against overvaluation. In other words, they desired, and intended to provide the means for a just and fair valuation. Now it is plainly important to the honest importer, and is necessary to a just valuation, that so many of the packages should be examined, as to enable the appraisers to know the quality and condition of the whole invoice. Any other mode of proceeding would be unsafe, in all cases for the government, as the want of such an examination gives opportunity for frauds; and, in many cases, when the quality of the goods is not uniform, it would be unsafe for the importer, as well as the government. And when congress, as part of this general system for making just and fair valuations, has required a certain fixed proportion of the packages contained in each invoice, to be sent to the public stores, there to "be opened, examined, and appraised," it seems to me they have required this to be done, as well for the protection of the importer as of the government; and that the former may well insist, that if this agreement has not been obeyed, the examination and appraisement have not been in conformity with the law.

It was argued, that the appraisers themselves were the judges, what examination was necessary; that some goods could be fairly examined by samples drawn from packages, others could not; that some were known to be of so uniform a quality, that an examination of one package was as good a means of testing the quality as the examination of the entire number of packages; and that the persons selected as appraisers know, or are presumed to know, what, and how far, they ought to examine. This would be true, if the law had prescribed no rule on the subject. But in my opinion, the section above cited, has prescribed a rule which the collector and the appraisers must conform to.

According to the offer of proof in this case, no package was examined, only samples, which the appraisers did not select. It is apparent that such an examination assumes, what the appraisers have no right to assume, that the samples, not selected by themselves, fairly represent the whole invoice. I think also that under a protest declaring that the appraisers did not faithfully examine the goods, these facts may be shown. The only further declaration which the plaintiffs could have made, would have been a description of the particular acts of omission or commission,—as that they did examine samples not drawn by themselves, and did not examine the number of packages required by law to be examined. I consider the act of February 26, 1846 [5 Stat. 727], concerning protests, to require a distinct and clear specification of each substantive ground of objection to the payment of duties. But I do not think the merchant obliged to describe, in detail, the particular acts, or neglects, which he considers, constitute such substantive objection. These protests are commercial documents, occurring in the course of trade, and under circumstances when technical precision, or fulness, cannot be expected, and ought not to be required. They must be so distinct and specific as, when fairly construed, to show that the objection taken at the trial, was in the mind of the importer, and has not since been sought out, and also to draw the attention of the collector to the substance of the objection, to the end that he may ascertain the precise facts, and cure the defect, if one, which is curable, exists. Now, here, the protest objects that the appraisers did not faithfully examine the goods. This certainly drew the attention of the collector directly to the inquiry what examination was made. The oath of the appraisers was, "faithfully" to examine and appraise the goods. When the protest alleges, they did not faithfully examine the goods, it informs the collector that, in the opinion of the importer, the appraisers have not complied with that requirement of their oath. I think it was for him to inquire what particular acts were done, or omitted, and that the importer was not bound to describe them in his protest. In my opinion also, the specification of want of fidelity in the examination of the goods, which confines the importer to that single subject-matter of objection, affords reasonable security against his setting up claims which are mere after-thoughts. It is true, there is very considerable difficulty in finding any precise rules, by which to determine, whether the requirement of the statute, to set forth distinctly and specifically the grounds of objection, has been complied with. There are degrees of distinctness and of certainty of specification, known to the law, as well as possible in practice. But even in special pleading it has been found impossible to define them, except in such general

terms as leave the pleader, after all, more dependent upon precedent, upon a judgment to be formed upon a particular case, than upon precise and comprehensive rules. The act in question, while it requires distinct specification, affords no measure as to the degree of certainty and precision required. And, considering the nature of the document, I think we can demand no more than that it should reasonably answer the ends proposed, to confine the importer to the substantive objection he then contemplated, and to apprise the collector of that objection. As I think this protest reasonably answers these ends, I hold it to be sufficient for the purpose of letting in the evidence proposed to be offered.

NOTE [From original report]. The case was then submitted to the jury, with an instruction, to find whether the examination actually made by the merchant appraisers was, in substance and effect, equivalent to an examination of at least one package in ten of the goods; and if it were not, to return a verdict for the plaintiff. They found for the plaintiff. And a writ of error having been prosecuted, the rulings excepted to by the defendant, were affirmed by the supreme court.

[NOTE. The supreme court, in affirming the judgment, assigned as its grounds therefor that the importer was not precluded by the return of the appraisers from disputing the sufficiency or accuracy of their assessment; that the statute having been designed for practical use by men engaged in active commercial pursuits, and intended to superinduce a prompt and amicable settlement of differences between the government and the importer, nice precision should not be exacted, nor should any strict rule of construction be applied to the notices required by the statute, and therefore that the language of the protest, asserting "that the goods were not fairly and faithfully examined by the appraisers," was sufficient without disclosing the grounds upon which the importer contended that the appraisement was unfair or unfaithful. Converse v. Burgess, 18 How. (59 U. S.) 413.]

BURGESS (PRATHER v.). See Case No. 11,367.

BURGESS (ROACH v.). See Case No. 11,873.

BURGESS (SAFFORD v.). See Case No. 12,213.

BURGESS (SALMON v.). See Case No. 12,262.

BURGESS (SHERWOOD v.). See Case No. 12,775.