## In re HAGOP BOGIGIAN CO.

### (Circuit Court, D. Massachusetts. May 23, 1900.)

### No. 818.

CUSTOMS DUTIES—ACT APPLICABLE—SUFFICIENCY OF PROTEST.

Where the only question of difference between an importer and a collector with reference to the assessment for duty of goods entered on July 24, 1897, was as to whether they were dutiable under the act of 1894 or that of 1897, they having been first appraised under the former and afterwards reclassified under the latter, a protest by the importer, on payment of the duty, which distinctly states his claim that they should have been assessed under the former act, is sufficient, although it does not specify the particular provisions of either act which were held or claimed to be applicable.

Walter B. Grant, for petitioner.

Boyd B. Jones, U. S. Atty., and Albert H. Washburn, Asst. U. S. Atty.

LOWELL, District Judge. On July 24, 1897, the petitioner entered certain oriental goods in the port of Boston, which goods were examined and entered under the rates of the tariff act of 1894. The proper officer of the custom house indicated by memoranda upon the face of the consular invoice the various rates and duties on the various items of shipment according to the rates fixed by that act. He stamped on the invoice, "I certify that this invoice has been examined, and the articles therein named entered." He also indicated on the invoice the gross "entered value" of the items or articles. On the same day the proper officer estimated in figures upon the inward foreign entry sheet the amount of duty to be paid on the "entered value" of the shipment in the sum of $785.55. The petitioner paid this sum, and took a receipt for the payment. Subsequently the articles indicated in the invoice were appraised according to the rates of duty of the tariff act of 1897. Thereupon the liquidating clerk struck out upon the inward foreign entry sheet the rates and estimates previously entered thereon under the act of 1894, and entered in red ink the rates and duties established by the act of 1897. The total duties under the act of 1897 were $1,239.45, and for the difference between this amount and the amount already paid, $453.90, demand was made upon the petitioner. This balance the petitioner paid under protest before the goods were released. The protest was as follows:

"Boston, Aug. 10, 1897.

"Hon. Winslow Warren, Collector, Port of Boston—Sir: We hereby protest against the liquidation of our entry per S. S. Sylvania from Liverpool, July 24/97, covering 8 pckges. oriental goods. and the assessment of duty under the so-called Dingley Bill or Act of 1897. The goods in question were entered and duties paid on July 24/97, before the new tariff bill had passed the U. S. senate, or been signed by the president, and we therefore claim that under the constitution of the United States the said bill had not become a law at the time

our entry was made. We claim that under these circumstances the goods in question are properly dutiable under the tariff law of 1894. We have paid the additional amount demanded in order to get possession of our goods, but we claim that the difference should be refunded.

"Very respectfully,                    The Hagop Bogigian Co.,
              "Per H. Bogigian, President, 22 Beacon Street, Boston.

"Entry 18,874.
"Man. 1,585.
"Liquidated Aug. 10/97.
"Decided April 14, 1899."

The board of general appraisers affirmed the decision of the collector as follows:

"Opinion of Somerville, General Appraiser.

"The merchandise covered by this protest was imported and entered for consumption on July 24, 1897, before the tariff act of that date had become a law. It was assessed for duty by the collector under the provisions of said act of July 24, 1897. The protestant claims that the merchandise is dutiable under the tariff act of Aug. 28, 1894, as 'oriental goods.' An inspection of the record shows that the invoice embraces about forty separate items, which were returned by the local appraiser and classified by the collector under some twelve different paragraphs of the tariff act of 1897. In view of these facts the claim that the goods are dutiable as 'oriental goods,' under said act of 1894, does not, in our judgment, set forth 'distinctly and specifically' the reasons for objection to the collector's action, within the requirements of section 14 of the customs administrative act of June 10, 1890. The protest is accordingly overruled, and the collector's decision affirmed.

"George C. Tichenor,
"J. B. Wilkinson, Jr.,
"Board of Classification of U. S. General Appraisers."

The sole question presented to this court is the sufficiency in law of the protest above set out. Section 14 of the customs administrative act of June 10, 1890, provides that the protest shall set forth distinctly and specifically, and in respect to each entry or payment, the reasons for the importer's objection to the decision of the collector. In my opinion, the protest in this case is sufficient. There was but one point of difference between the importer and the collector, viz. Were the articles indicated in the invoice dutiable under the act of 1894 or under the act of 1897? Further than this no question as to the rate of duty was raised. It is true that the estimated duty of $785.55, which was paid without objection by the petitioner, had not then been liquidated, and so no technical protest under section 14 against the proposed classification under the act of 1894 had then become possible; but the importer and collector were entirely of one mind in considering that the controversy between them in no way concerned this classification, but only the applicability of the act of 1897. This is made abundantly clear by the letter of the deputy collector, found in the record, in which he says that the protestants claimed that the merchandise covered by their protests was dutiable under the tariff act of 1894, "on the ground that said act was the only act in force at the time their entries were made and duties paid." "The requirements of section 14, Act June 10, 1890, have been duly complied with. In view of the nature of these protests, I have not deemed it necessary to forward the invoices." Of course, the opinion of the collector is not binding either upon the board of general appraisers or upon this court, but his letter is quoted to show that the

controversy between himself and the petitioner was understood in the same sense by both parties, and that he considered the particular rates of duty imposed upon particular kinds of goods to be so little in question that he did not, in the first instance, think it worth while even to forward to the board of general appraisers the invoices showing the particular rates of duty imposed. Under these circumstances, the case at bar seems to me to fall wholly within the language of various decisions binding upon this court.

In Davies v. Arthur, 96 U. S. 128, 24 L. Ed. 758, the court said that two objects were intended to be accomplished by the requirement of a protest:

"(1) To apprise the collector of the objections entertained by the importer, before it should be too late to remove them, if capable of being removed. (2) To hold the importer to the objections which he then contemplated, and on which he really acted, and prevent him, or others in his behalf, from seeking out defects in the proceedings, after the business should be closed, by the payment of the money into the treasury."

Both these objections were fully accomplished by the protest in the case at bar.

Again, in Arthur v. Morgan, 112 U. S. 495, 501, 5 Sup. Ct. 243, 28 L. Ed. 827, it was said:

"The solicitor general concedes that the objection to the protest is a 'bare technicality,' and that its nature could hardly mislead the officers." "The protest must set forth 'distinctly and specifically' the grounds of objection to the decision of the collector as to the rate and amount of duties." "A protest is not required to be made with technical precision, but is sufficient if it shows fairly that the objection afterwards made at the trial was in the mind of the party, and was brought to the knowledge of the collector, so as to secure to the government the practical advantage which the statute was designed to secure."

See, also, Burgess v. Converse, 2 Curt. 216, Fed. Cas. No. 2,154.

In Herrman v. Robertson, 152 U. S. 521, 14 Sup. Ct. 686, 38 L. Ed. 538, the goods were classified by the appraiser as similar to manufactures composed wholly or in part of "the hair of the alpaca goat, or other like animals." The importer contended that the goods were dutiable as "nonenumerated, composed of hair and cotton only." The court held that the goods were dutiable as manufactures of hair not otherwise provided for, but that the protest was insufficient, as it did not suggest the classification which ultimately was held to be correct. In that case the protest "failed to point out or suggest in any way the provision which actually controlled," while in the case at bar the protest raised precisely the question upon which the case must be held to turn. The actual decision in Davies v. Arthur, above cited, went on the same ground as that in Herrman v. Robertson.

The district attorney ingeniously contended that, if the decision of the general appraisers was reversed, the collector, in assessing duties under the act of 1894, might not agree with the importer as to the application of the rates of duty imposed by that act, and so that another controversy between them might become the subject of another protest. It is not necessary now to determine if, in the unlikely event suggested, the importer could avail himself of another protest. Decision of the board of general appraisers reversed.