## LOTHROP et al. v. UNITED STATES.

(Circuit Court, D. Massachusetts. July 27, 1908.)

### No. 236 (1,941).

CUSTOMS DUTIES—SUFFICIENCY OF PROTEST.
    Under Customs Administrative Act June 10, 1890, c. 407, § 14, 26 Stat. 137 (U. S. Comp. St. 1901, p. 1933), prescribing that protests shall set forth "distinctly and specifically" the importer's objections, a protest is sufficient which, though imperfectly expressed, may be understood when read in connection with the statute referred to therein; and the fact that the collector understood the protest is relevant.

On Application for Review of a Decision by the Board of United States General Appraisers.

The decision below overruled protests by L. D. Lothrop and J. H. Rowe Company against the assessment of duty by the collector of customs at the port of Boston. The opinion filed by the Board of General Appraisers reads as follows:

Fischer, General Appraiser. The merchandise to which these protests relate consists of fishhooks made from round iron or steel wire, upon which duty was assessed at the rate of 40 per cent. ad valorem and 1¼ cents per pound under the provisions of paragraph 137 of the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, schedule C, 30 Stat. 161 [U. S. Comp. St. 1901, p. 1639]). The claim in the protest is set forth in the following language:

"We (or I) claim that as the wire in said hooks is valued at less than four (4) cents per pound, that duty should only be paid under the first section of said paragraph 137, and no add-valurem duty be collected."

It is not necessary to go into the merits of the question of classification attempted to be raised by these protests, for they are fatally defective and insufficient, and, even if the assessment of duty made by the collector be erroneous, no relief can be afforded the importers.

The protests arise under the same paragraph (137), and they have substantially the same defects, with one in addition, as those which were overruled as insufficient by the Circuit Court in the case of Boker & Co. v. United States, 140 Fed. 115, T. D. 26,451, affirming the ruling of the board in G. A. 5,879 (T. D. 25,892). On further appeal, the decision of the lower court and the board was affirmed without opinion, 145 Fed. 1022, 74 C. C. A. 681, T. D. 27,192. In his opinion Judge Townsend said:

"The paragraph is a long one. The protest fails to state on what ground the objection is made, or what rate of duty is claimed. It is, therefore, insufficient within the rule that 'the importer shall set forth in his protest distinctly and specifically the reasons for his objection to the assessment.'"

These remarks apply precisely to the protests now before us. The claim is "that duty should only be paid under the first section of said paragraph 137," but there are no less than three different rates of duty prescribed in the first section. Such a protest does not apprise the collector of just what the importer's claim is.

This is not a mere captious criticism, nor is it a rigorous exaction of technical precision. The rates prescribed in the opening clause of paragraph 137 depend on the gauge of the wire, and the gauge of the wire is a fact that is peculiarly within the knowledge of the importer. It is, then, no hardship to require him to state it in his protest, for without such information the

liquidating officer would be helpless. There are before us now for decision several protests involving the rate of duty on fishhooks, which will be sustained because they point out the particular rate of duty claimed for each class of hooks, and the proof offered is sufficient to show that there was error on the part of the classifying officer, and that the importer has made the correct claim, an indication that the rule we here enunciate does not call for the performance of an impossibility. Note G. A. 6,494 (T. D. 27,764).

Another and an even more serious objection to the success of the importers' contention is that under no circumstances could fishhooks, no matter of what grade or gauge of wire, be held dutiable under this so-called first section. Fishhooks are "articles manufactured from wire," and these are specially provided for in the second proviso to paragraph 137 at a rate different from the rate imposed upon wire.

In our opinion, these protests are not a sufficient compliance with the statute (Act June 10, 1890, c. 407, § 14, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933]), and they are hereby overruled. The decision of the collector in each case will stand.

Comstock & Washburn and Searle & Pillsbury (Albert H. Washburn, of counsel), for importers.

William H. Garland, Asst. U. S. Atty.

LOWELL, Circuit Judge. The petitioner imported fishhooks which were assessed for duty at 1¼ cents per pound, and 40 per cent. ad valorem. Against the payment of this duty he protested as follows:

"I hereby protest against the payment of a duty of one and one quarter (1¼) cents per pound and 40% add-valurem [ad valorem] on certain Fish Hooks, under paragraph 137 of the Tariff, 1897.

"These hooks were imported into Boston, Dec. 23rd, 1905, from England and brought into this district under Immediate Transportation, Entry No. 3,226, and entered for consumption here, Entry No. 70, dated Dec. 27th, 1905.

"I claim that as the wire in said Hooks cost less than four cents (4¢) per pound, that duty should only be paid under the first section of said paragraph 137, and no add-valurem [ad valorem] duty collected."

The Board of General Appraisers sustained the collector, upon the ground that the protest was insufficient. It is admitted that the goods were dutiable under paragraph 137 of the Dingley act, which reads as follows:

"Round iron or steel wire, not smaller than number thirteen wire gauge, one and one-fourth cents per pound; smaller than number thirteen and not smaller than number sixteen wire gauge, one and one-half cents per pound; smaller than number sixteen wire gauge, two cents per pound: Provided, that all the foregoing valued at more than four cents per pound shall pay forty per centum ad valorem. Iron or steel or other wire not specially provided for in this act, including such as is commonly known as hat wire, or bonnet wire, crinoline wire, corset wire, needle wire, piano wire, clock wire, and watch wire, whether flat or otherwise, and corset clasps, corset steels and dress steels, and sheet steel in strips, twenty five one thousandths of an inch thick or thinner, any of the foregoing, whether uncovered or covered with cotton, silk, metal, or other material, valued at more than four cents per pound, forty-five per centum ad valorem: Provided, that articles manufactured from iron, steel, brass, or copper wire, shall pay the rate of duty imposed upon the wire used in the manufacture of such articles, and in addition thereto one and one-fourth cents per pound, except that wire rope and wire strand shall pay the maximum rate of duty which would be imposed upon any wire used in the manufacture thereof, and in addition thereto one cent per pound; and on iron or steel wire coated with zinc, tin, or any other metal, two tenths of one cent per pound in addition to the rate imposed on the wire from which it is made."

The collector imposed a duty (1) of 1¼ cents per pound for the wire; (2) 1¼ cents per pound additional for the manufacture; and (3) 40 per cent. ad valorem. It is not disputed that (1) and (2) were correctly imposed, nor that the importation should have been admitted without payment of (3). The collector's mistake in adding (3) is conceded.

The United States contends that the protest did not set out distinctly and specifically the reasons for the importer's objections to the collector's liquidation. It contends, in effect, that the protest was unintelligible. But, if the protest be read in connection with the paragraph cited therein, its meaning is plain, notwithstanding its imperfect expression. The importer's protest was against an ad valorem duty upon fishhooks, imposed because the wire in the hooks cost more than four cents per pound. The protest alleged that the wire cost less than 4 cents per pound. If so, no ad valorem duty was payable, and the wire fishhooks were made liable only to a specific duty. If the collector had had before him nothing but the protest and paragraph 137, I believe that he could not reasonably have failed to know the grounds of the importer's objection to the liquidation.

If this is true, it is not necessary to consider how far the court may take into account that the collector knew in fact perfectly well what the protest meant. If the object of the protest be to notify the collector of the true nature and character of the importer's objection, the fact that the collector understood the protest would seem to be relevant. This view of the law appears to be borne out by the language of the opinions in Schell v. Fauche, 138 U. S. 562, 11 Sup. Ct. 376, 34 L. Ed. 1040; Davies v. Arthur, 96 U. S. 148, 24 L. Ed. 758; Arthur v. Morgan, 112 U. S. 495, 5 Sup. Ct. 241, 28 L. Ed. 825; U. S. v. Salambier, 170 U. S. 621, 18 Sup. Ct. 771, 42 L. Ed. 1167; Burgess v. Converse, 2 Curt. 216, Fed. Cas. No. 2,154; In re Hagop Bogigian Co. (C. C.) 104 Fed. 75. U. S. v. Schefer (C. C.) 71 Fed. 959, decided only that the collector has no authority to absolve the importer from the duty of filing a protest within the statutory period as the prerequisite of a refund of duties. The case did not decide that the collector's state of mind cannot be inquired into in order to determine if a protest is unintelligible to him. According to section 14 of the customs administrative act (Act June 10, 1890, c. 407, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933]), it is hard to see what authority the collector has to modify his liquidation after receipt of the protest, or, indeed, what he can do with the protest, except forward it immediately to the Board of General Appraisers. But undoubtedly the practice has always permitted reliquidation by the collector after the protest is received. By the customs administrative act that protest must, indeed, be filed after liquidation, but not necessarily after payment of the duties.

Whether we consider the language of the protest or the effect which it produced upon the collector's mind, the requirements of the act were met.

The judgment of the Board of General Appraisers is reversed.