## HARRIS *v.* UNITED STATES (No. 526).[1]

1. A VALUATION, FINAL AND CONCLUSIVE.

The question is one of valuation, arising out of the appraisement by a board of reappraisement, under tariff act of 1897, of certain Georgian raw autumn wool, white and colors. At the hearing before the board testimony was introduced by the respective parties tending to sustain their several contentions. The board's decision, based on the testimony so offered, can not now be reviewed to determine questions that relate only to the proper weight or proper effect of the evidence.—Wolff *v.* United States (1 Ct. Cust. Appls., 181; T. D. 31217).

2. EXAMINATION OF 1 IN 10.

An irregularity in complying with the legal requirements as to the sufficiency of samples of goods before a board of reappraisement will be deemed to have been waived if the importer was present and made no objection to the irregularity. Oelrichs & Co. *v.* United States (2 Ct. Cust. Appls., 355; T. D. 32091).

## United States Court of Customs Appeals, February 15, 1912.

TRANSFERRED from United States Circuit Court, District of Massachusetts, G. A. 6502 (T. D. 27784) and Abstract 14010 (T. D. 27801).

[Affirmed.]

*Wm. H. Harris* and *Walter Evans Hampton* for appellant.

*Wm. L. Wemple,* Assistant Attorney General (*Wm. K. Payne,* Deputy Assistant Attorney General, and *Wm. A. Robertson* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

In the year 1905 the appellant imported into this country at the port of Boston various shipments of wool which came from the Province of Georgia in Russia and were exported at Tiflis. The wool is referred to in the testimony and briefs as Georgian raw autumn wool.

The importation was third-class wool as defined by paragraph 351 of the act of 1897, and it was therefore dutiable, under paragraphs 358 and 359 of that act, at 4 cents per pound if valued at 12 cents per pound or less, and at 7 cents per pound if valued at more than 12 cents per pound.

The importation contained both colored and white wools, and these were separately packed and also separately valued upon the invoice. The dutiable value of the importation as thus stated in the invoice was throughout less than 12 cents per pound, and therefore was entered under a claim for the lower duty.

The appraiser of the port, however, reported that the white wool of the importation was of greater value than 12 cents per pound, and accordingly subject to the higher duty. The colors were appraised within low-duty valuation.

The importer objected to the increased valuation of the white wool, and contended that the whites and colors together comprised but a single article, and should accordingly be appraised at a single

---

[1] Reported in T. D. 32286 (22 Treas. Dec., 304).

round price. He claimed that in the country of exportation all Georgian raw autumn wool, although comprising both whites and colors, was treated in the market as a single kind and bought and sold at a round price; and furthermore, that he had not caused the wool to be separately stated and valued in the invoice, but that this method had been pursued without authority from him by foreign factors who understood that course to be required by the consul at Batum. The importer insisted that the value of the importation taken as a whole and appraised at a round price, according to the custom of the market of exportation, was within low-duty limit.

The importer thereupon appealed for reappraisement to a single general appraiser under favor of section 13 of the administrative act. The importations having been entered at different times this litigation actually comprised two such appeals, each going in due course to a single general appraiser.

In the one instance the general appraiser sustained the local appraiser; in the other instance the general appraiser reversed the action of the local appraiser and sustained the invoice valuation. These two separate decisions were severally appealed to three general appraisers sitting as a board of reappraisement, and in each case the appeal was decided adversely to the claim of the importer. The wool was therefore finally appraised at separate values, whereby the whites were subject to high duty and the colors to low duty.

Thereupon the collector liquidated the entries in accordance with the reappraisement, to which the importer objected and protested.

As has been stated, the litigation actually proceeded in two parts; there were therefore two protests filed by the importer and these were duly forwarded to the Board of General Appraisers.

The board heard the protests upon evidence and overruled the same. From these decisions the importer appealed to the United States Circuit Court, District of Massachusetts, where additional testimony was incorporated in the record. The cases, however, never came to trial in that court, but were finally consolidated and transferred to this court under the present act.

The ultimate issue between the parties therefore relates to the value of the importation. This value was first found by the local appraiser, then reviewed by the single general appraiser, and found upon appeal by the reappraisement board of three general appraisers, and protests thereto were heard upon appeal by the Board of General Appraisers. This court is now asked by appellant to reverse the decision made by the reappraisement board and to order a reliquidation in accordance with the invoice valuation.

The three general appraisers, acting as a board of reappraisement, have their duties and authority defined by section 13 of the customs administrative act. It is provided therein that the board upon such

an appeal to reappraisement of merchandise "shall examine and decide the case thus submitted, and their decision or that of a majority of them shall be final and conclusive as to the dutiable value of such merchandise against all parties interested therein."

It becomes important in view of the foregoing provision to ascertain what questions may properly be raised upon an appeal like this, since it is really an appeal directed against such a reappraisement. An answer to this inquiry is found in the recent case of Oelrichs & Co. *v.* United States, decided by this court at its last term (2 Ct. Cust. Appls., 355; T. D. 32091), wherein Montgomery, Presiding Judge, says:

On such an appeal the questions presented are narrow, as have been frequently adjudicated. All that is open for review is the question of whether the board acted within its jurisdiction. If it did, its decision is final and conclusive, and all other tribunals are bound to respect it.

In the petition filed by the appellant in the circuit court, 16 several specifications or assignments of alleged errors are presented. Upon inspection, however, it appears that these assignments and the arguments made in their behalf are almost entirely in the nature of a review of the testimony for the purpose of demonstrating that the reappraisement board's decision was against the weight of the evidence. This reference includes all those parts of the record which relate to the manner in which the wool was bought in Russia, the price there paid for it, the custom of the country in respect to that market, the relations of the appellant with purchasing merchants there, the conditions of the trade, and all those elements of fact which went to make up the actual transaction. Such questions of fact were necessary subjects of consideration in the reappraisement hearing, but they raise no such issue as can now properly come before the court in the present case. The record in the case is voluminous, but most of the questions made in it really relate to the admission or effect of testimony in relation to the subjects above mentioned; these questions, without specific mention, are held to be within the rule just referred to.

It does not appear that all of the testimony which was submitted to the reappraisement board has been brought upon the present record by a tender to the classification board or to the circuit court. Such partial testimony, however, as was so tendered was rejected, upon the ground that it was immaterial to the issue upon appeal. That ruling agrees with the view of this court, for even if the record exhibited all of the testimony which was before the reappraisement board, this court nevertheless can not inquire whether the board misapprehended or misapplied it, or reached a mistaken conclusion upon the facts disclosed by it. It is sufficient in that behalf to say that at the hearing before the board testimony was introduced by the respective

parties tending to sustain their several contentions; the testimony was heard by the board, and the board's decision upon it can not now be reviewed upon any question relating only to the weight or effect of the evidence.

Further authority for this conclusion is found in the case of Wolff v. United States (1 Ct. Cust. Appls., 181; T. D. 31217), wherein Smith, Judge, speaking for the court, said:

> Section 13 of the act requires the appraiser to report to the collector his decision as to the value of the merchandise appraised, and makes his decision final against the importer, unless the latter gives due notice of dissatisfaction therewith, in which event it is provided that the matter shall be submitted to a general appraiser, whose finding becomes conclusive unless an appeal is properly taken to a board of three general appraisers, the decision of which is declared to be "final and conclusive as to the dutiable value of such merchandise against all parties interested therein."
>
> This legislation had for its object the prompt collection of the Government revenues and was dictated by the consequent necessity for a speedy and final settlement of the all-important questions of actual market value and wholesale price of imported goods at the time of exportation. By it Congress confided to certain officers and a special tribunal exclusive jurisdiction of the subject matter of valuation and clearly manifested its intention that the basis upon which ad valorem duties are assessed and collected should not be submitted to the long, tedious, and necessarily complicated processes of judicial determination. When, therefore, those officers and that tribunal charged by the law with the special duty of appraising imported merchandise have acted within the powers conferred by statute, the exercise of their discretion on the subject matter of their jurisdiction, and the justice, correctness, and validity of their appraisement should not and can not, in the absence of fraud, be subjected to review by the courts.

The appellant presents, however, an assignment of error which is claimed to touch upon the jurisdiction of the board. That contention is that the board did not open, examine, or appraise 1 bale in 10 of the importation as is required by sections 2901 and 2939 of the statutes. Appellant claims that the requirements of those sections are mandatory, and that the reappraisement board was without jurisdiction to make a lawful appraisement if their provisions were not obeyed.

It appears that the appraiser, and also the reappraisement board, had before them for examination various samples from the importations.

The samples were regarded by the board as sufficient for the purpose, but did not comprise 1 bale in 10 of the entire importation. The question therefore presents itself whether or not the failure of the appraiser and reappraisement board to have 1 bale in 10 of the importation before them for examination is such a departure from the law as to justify and require a reversal of the appraisement for that reason alone.

Upon the record at bar a negative answer to this question is required, both by reason and authority. It appears that the importer was present at the hearing and did not object to the samples, nor

except to the action of the board in that behalf. In fact the importer has at several places in the record distinctly stated that he never objected on that ground. The following quotations from the testimony of the importer and of other witnesses are sufficient authority for this statement:

Wm. H. Harris (Record, p. 22):

Int. 21. Did you attend the appraisement of these goods?—A. Yes.

Int. 22. Any objection taken by you or by your brokers to the sufficiency of the samples as properly representing the merchandise?—A. I do not think that question was raised at the reappraisement.

(Record, p. 31):

Cross-int. 89. I think you stated in answer to a question of Judge Somerville that you did not make any objection before the board of three as to the sufficiency of the samples that was before them?—A. No, I don't think that had been raised.

Cross-int. 90. You did not say to the board that the samples were not sufficient?—A. No, that has never been officially contended on my part.

General Appraiser Fischer (Record, p. 38):

Int. 6. Mr. Fischer, do you remember if Mr. Harris appeared in person at this reappraisement?—A. I do.

Int. 7. Did the board have samples before it?—A. Yes.

Int. 8. Was any objection made by the importer or anyone representing him to the sufficiency of the samples?—A. There was none.

General Appraiser Howell (Record, pp. 39–40):

Int. 5. Mr. Howell, were you present when those hearings were had?—A. I was.

Int. 6. Do you know whether Mr. Harris was there or not?—A. I do; he was.

Int. 7. Did the board have samples before it, if you recall it?—A. I know that the board had samples, and, as I remember, at the hearing they were on the table. That is my best recollection.

Int. 8. Do you know whether the importer made any objection to the sufficiency of them?—A. I am very sure that he did not.

It is clear from the testimony that the appellant can not now complain respecting the samples, unless the omission in that behalf absolutely deprived the reappraisement board of jurisdiction over the case and made its decision a mere nullity. For if such omission was a mere irregularity or error, it was certainly waived by the action of the importer, and he can not now avail himself of it.

This question was before the court in the case of Oelrichs & Co. *v.* United States, above cited, and the court therein held that under circumstances substantially similar to these the reappraisement board acquired and maintained its jurisdiction over the case, notwithstanding the fact that it failed to comply exactly with the requirement for 1 bale in 10 as legal samples from the importation. The case just above named is so similar to this in every essential feature that it may indeed be generally cited as an authority for the decision of the present case.

And in this case, as in that, upon a review of the record the court concludes that the appraisement made by the reappraisement board was made upon evidence, and its action upon that evidence was within its jurisdiction and was final and conclusive.

Therefore the decision of the Board of General Appraisers refusing to disturb the appraisement is *affirmed*.

DE VRIES, Judge, did not sit in this case.