TUCKER (GULLAT v.). See Case No. 5.866.

TUCKER (HENOP v.). See Case No. 6,368.

---

## Case No. 14,220.

### TUCKER et al. v. KANE.

[Taney, 146.] [1]

Circuit Court, D. Maryland. Nov. Term, 1850.

CUSTOMS DUTIES—MERCHANT APPRAISERS — FORMALITIES — REVIEW AND REVERSAL—SECRETARY OF TREASURY—OFFICIAL APPRAISERS—APPEAL.

1. An appraisement made under the act of congress of 30th August, 1842 [5 Stat. 548], by merchant appraisers, appointed by the collector of customs, to appraise and value imported goods, in a case of dissatisfaction on the part of the importer with the official appraisement, is final, and must be deemed and taken to be the true value of the goods, and the duties must be levied upon them accordingly.

[Cited in U. S. v. Leng, 18 Fed. 22.]

2. The appraisers are referees appointed to decide between the officers of the government and the importers.

3. The law does not require that the appraisement of the merchant appraisers should have all the formalities and precision of a common law award. nor is it necessary to set forth in it the principles upon which they acted. nor the evidence by which they were governed.

4. If it could even be proved that there was evidence before them sufficient to show that their decision was against the weight of evidence. yet their judgment could not on that account be reversed: there is no tribunal authorized to review it: the law makes it final as to the question of value.

5. If, indeed, it appeared on the face of the appraisement, that they merely intended to ascertain the price paid for the article, and not its market value in the principal markets in the country, the appraisement would be a nullity.

6. The construction of their award cannot be influenced by the knowledge of the secretary of the treasury, that there was evidence before them, which ought, in his judgment, to have produced a higher valuation.

7. The appraisement must speak for itself, and be construed by its own language: if its validity is to be impeached by anything outside of the award, it must be by testimony showing that the question referred was not decided, or some misconduct in the appraisers.

8. The twenty-third and twenty-fourth sections of the act of 30th August. 1842. do not confer upon the secretary of the treasury, the power to set aside the appraisement, because, from the

1 [Reported by James Mason Campbell, Esq.. and here reprinted by permission.]

terms used by the appraisers, and his knowledge of the evidence before them, he was of opinion, that they intended to estimate the value of the importation at its cost to the importers, and not at the general market value.

9. The appraisement, if a nullity at all, is so, independently of his decision, and he has no power to review it.

10. The twenty-third section of the act of congress authorizes the secretary to establish rules and regulations to secure a just and impartial appraisal, and all appraisers. official or merchant, are bound by the rules and regulations. But they are merely modes of proceeding by which the appraisers are to obtain evidence and ascertain the value; the valuation they make, under these rules and regulations, must be their own impartial judgment, and the secretary cannot set it aside, because he is of opinion that it is against the weight of evidence.

11. The twenty-fourth section of the act does not apply to an appraisement regularly made by merchant appraisers.

12. During the pendency of an appeal under this act, made by the importer, it is the duty of the collector to proceed, until he has obtained a valid appraisement by merchant appraisers; and until this is done, he has no right (after the appeal is made), to exact duties on the enhanced valuation of the official appraisers, nor the penal duty which may follow this valuation.

13. The importer is not bound to make a second appeal, nor is the collector authorized to charge and collect the duties, as if the decision of the official appraisers were final and conclusive, while the appeal from their decision is still pending and undecided.

[This was an action by Richard Tucker and Henry Tucker against George P. Kane, collector, to recover for duties paid under protest.]

J. Glenn, for plaintiffs.

Z. C. Lee, Dist. Atty., for defendant.

TANEY, Circuit Justice. This action is brought by the plaintiffs against the defendant. as collector of the port of Baltimore, to recover back certain duties paid by them under protest upon a quantity of pimento imported, in the schooner Juliet, from St. Ann's Bay, in the Island of Jamaica.

The official appraisers determined that the true value of this pimento, in the principal markets of the country from which it was imported. exceeded the invoice price; and this excess being. according to the appraisement. more than ten per cent., the penal duty of twenty-five per cent. was added, and the whole amount demanded by the collector. The importer was dissatisfied with this appraisement. and gave notice of his dissatisfaction to the collector. according to the provisions of the seventeenth section of the act of 1842; and the collector then appointed E. P. Cohen and Wm Lemmon, two merchants of the city of Baltimore, and both citizens of the United States, to appraise and value the said goods. These appraisers undertook the duty assigned to them, and made their award in the following words.

"Baltimore. 16 November. 1849. The undersigned merchants. appraisers appointed to review the appraisement of the cargo of the schooner Juliet, from St. Ann's Bay, Jamaica,

beg leave to report, that they have carefully investigated all the facts connected with this shipment, and feel satisfied, from the positive, as well as corroborative testimony submitted to them, that the price named in the invoice of pimento (viz., 2½ per pound), was the actual price paid for the same, and the true value of the article, at the time of shipment, and that the duties here should be adjusted accordingly. We are very respectfully your obedient servants, E. P. Cohen, Wm. P. Lemmon.

"To Col. Geo. P. Kane, Collector, Port of Baltimore."

This appraisement, it appears, was reported to the secretary of the treasury, by the collector, and the reply of the secretary states that, from the language of the appraisement, and from the circumstance, "that the merchant appraisers had before them evidence, furnished on appraisements at New York, of importations of pimento from Jamaica, shipped about the same time, going to show that the market value of the article was higher than that stated in the invoice under review, the department was compelled to infer that their estimate of value referred solely to the price or cost, paid by the owner or shipper, and not to the actual market value or wholesale price, at the time of shipment, in the principal markets of the country." And he proceeds to state that, upon these grounds, this appraisement was not in conformity with law, and must be disregarded; and that, if the importers were still dissatisfied with the appraisement of the United States appraisers, the collector, upon being notified by them, in writing, might select another set of merchant appraisers, to appraise these goods, and lay before them all the evidence in his possession, bearing upon the case.

The importers, however, refused to apply for another appraisement by merchant appraisers, insisting that the one already made was conclusive upon the subject; and thereupon, the whole amount of duties, as ascertained by the officers and appraisers, was, under the order of the secretary, demanded by the collector, and paid by the importers; and this suit is brought to recover back the excess thus paid, over and above the amount due on the appraisement of the merchant appraisers.

The act of congress declares that the appraisement of the merchant appraisers shall be final, and deemed and taken to be the true value of the goods, and the duties are to be levied upon them accordingly.

They are referees, appointed to decide between the officers of the government and the importers, when a difference shall exist between them, as to the value of the goods, upon which the duties are to be charged. The subject-matter in dispute, in this case, referred to the merchant appraisers, was the market value, or wholesale price of the pimento, at the time of the shipment, in the principal markets of the country from which it was imported. They report that they have carefully investigated all the facts connected with this shipment, and feel satisfied from the positive, as well as corroborative testimony submitted to them, that the price named in the invoice was the actual price paid for the same, and the true value of the article. When they speak of the true value, they must, of course, be understood to speak of the value referred to them, that is, the market value or wholesale price, at the time of shipment, in the principal markets of the country from which it was shipped; this is the natural import of the words used, when taken in connection with the subject referred.

The law does not require that the appraisement of the merchant appraisers should have all the formalities and precision of a common law award; nor is it necessary to set forth in it the principles upon which they acted, nor the evidence by which they were governed. It is not suggested, that there was any misconduct on the part of the appraisers; they were selected by the collector himself, and admitted on all hands to be highly respectable and intelligent merchants. And if it could even be proved, as mentioned in the letter of the secretary, above quoted, that there was evidence before them sufficient to show that the invoice value was too low, and their decision against the weight of evidence; yet their judgment could not, on that account, be reversed; there is no tribunal authorized to review it; the law makes it final, as to the question of value.

Certainly, if it appeared on the face of the appraisement, that they merely intended to ascertain the price paid for the pimento, and not its market value in the principal markets in the country, the appraisement would be a nullity, and would not fix the dutiable value of the goods. But as we have already said, the language used by the merchant appraisers will not justify that construction; the fair construction of the instrument is, that the true value of which they speak, is the dutiable value they were required to ascertain, and concerning which they heard evidence, as appears by the correspondence produced by the government. And the construction of their written award cannot be influenced by the knowledge of the secretary, that there was evidence before them, which ought, in his judgment, to have produced a higher valuation. The appraisement must speak for itself, and be construed by its own language; and if its validity is to be impeached by anything outside of the award, it must be by testimony showing that the question referred was not decided, or showing some misconduct in the appraisers.

The power exercised by the secretary of the treasury, and contended for in the argument here, is supposed to be conferred upon him by the twenty-third and twenty-fourth

sections of the act of 30 August. 1842. It has been argued that, inasmuch as it is made his duty, under these sections, to secure a just, faithful and impartial appraisement of all goods, wares and merchandise, imported into the United States, and just and proper entries of the actual market value and wholesale price thereof, he had the power to set aside this appraisement, because, from the terms used, and his knowledge of the evidence before them, he was of opinion that they intended to estimate the value of the importation at its cost to the importers, and not at the general market value. Undoubtedly, if it had appeared that the merchant appraisers had not decided the question submitted to them, their appraisement would have been a nullity, without any action upon it by the secretary of the treasury; and it would have been the duty of the collector, without any instruction or authority from the department, to call upon the appraisers for their award upon the matter actually referred; or perhaps, he might, in such a case, have appointed new merchant appraisers. But the decision of the secretary could not invalidate it; he has no power, we think, under the twenty-third and twenty-fourth sections, to review their judgment, nor to exercise any control over their decisions.

Indeed, even as relates to the government appraisers, the appraisement must be the impartial and independent judgment of their own minds. The twenty-third section, it is true, authorizes the secretary to establish rules and regulations to secure a just and impartial appraisal; and all appraisers, official or merchant, are bound by these rules and regulations; but they are merely modes of proceeding, by which the appraisers are to obtain evidence, and ascertain the value; the valuation they make, under these rules and regulations, must be their own impartial judgment, and the secretary cannot set it aside, because he is of opinion that it is against the weight of evidence. The twenty-fourth section, in terms, is confined to the officers of the revenue, and cannot be construed to give him the power to set aside an appraisement, regularly made by merchant appraisers, nor does it make his construction of the law, as has been intimated in the argument, binding upon the court.

But if this award was open to the objections taken to it, still these duties were, we think, unlawfully exacted. The act of congress gives the importer the right to appeal from the decision of the official appraisers; that appeal has been made by the importer, and has not been withdrawn. It was the duty of the collector to proceed, until he had obtained a valid appraisement from merchant appraisers; until this was done, he had no right, after the appeal was made, to exact duties on the enhanced valuation of the official appraisers, nor the penal duty which followed this valuation. The importer was not bound to make a second appeal,

nor was the collector authorized to charge and collect the duties, as if the decision of the official appraisers was final and conclusive, while the appeal from their decision was still pending and undecided.

But, as we have already said, we consider the appraisement of the merchant appraisers a valid one, and binding upon both parties; and the plaintiffs are, therefore, entitled to recover the amount collected, over and above the sum due on that appraisement.