## SHALLUS *v.* UNITED STATES (No. 1319).[1]

VALIDITY OF REAPPRAISEMENT OF LINOLEUM.

A board of reappraisement is not a judicial tribunal and may use information acquired on previous appraisements. They had here jurisdiction of the subject of the proceedings, and the classification board did not err in sustaining the other board's action.—Wolff *v.* United States (1 Ct. Cust. Appls., 181; T. D. 31217).

## United States Court of Customs Appeals, May 28, 1913.

APPEAL from Board of United States General Appraisers, Abstract 33998 (T. D. 33833).

[Affirmed.]

*Walter Evans Hampton* for appellant.

*William L. Wemple*, Assistant Attorney General (*William A. Robertson*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court—

This is an appeal from a decision of the Board of General Apprais: ers sustaining the action of a reappraisement board refusing a reappraisement of shipments of linoleum from England.

The record is voluminous and the issues somewhat involved, but we think the meritorious questions may be gathered from the brief of counsel. As we construe the brief, the contention is that the facts are that linoleum is sold in England, deliverable at any point in England at a stated price, which includes freight to destination, and that the average of such freight was represented by a 10 per cent deduction noted on the invoice and disallowed by the appraiser.

Obviously, this 10 per cent could at best be but an estimate, as the brief of counsel states that such freight would amount to from 8 to 12 per cent. The contention was made before the general appraiser and the board of reappraisement that the price, less the freight, or rather the 10 per cent estimate average of freight, should control.

The reappraisement board found the facts as follows:

Manufacturers of linoleum in Great Britain sell their product at the same prices to all purchasers and agree at their own expense to pay all costs and charges incidental to its delivery in every part of the Kingdom. The result of this custom is that while the purchasers all pay the same price, the sellers realize varying net sums according to the cost of delivery to the many places whence shipped. There is proof here of sales and deliveries to certain distant and remote places in Great Britain, but there is no proof of sales or deliveries to any large or near-by cities of importance where the cost of transportation is much lower than to the places included in the proofs submitted.

_____

[1] Reported in T. D. 34525 (26 Treas. Dec., 926).

The proofs in other reappraisements on linoleums show that there is a large market for such merchandise in London, and that the cost of transportation to London does not differ much from the cost of transportation to seaboard, which we allow in this case. The importers here claim that market value is that net price which the manufacturer receives after deducting the highest freight rate paid by him. If this contention be well founded it would follow that as we must take the market price on the day of shipment, that that price would vary each day according to place of delivery in Great Britain. If to a distant and remote place, the value would be low. If to a near-by place, the value would be high. He would thus be allowed to select his own time and conditions for duty purposes, and this we consider improper. This importer secures free freight to seaboard, which places him on a parity with some domestic purchases, and this we allow.

It is obvious from this finding that the board found London to be one of the principal markets of the country of export and adopted the price there prevailing. Assuming that the general appraiser and the reappraisement board proceeded within their respective jurisdictions, the finding of the principal market is not open to review by the classification board or this court. Stairs v. Peaslee (18 How., 521, 527); Horace Day Co. v. United States (3 Ct. Cust. Appls., 152, 160); subsec. 10, sec. 28, act of 1909.

But the importer contends that the board took into consideration evidence in other cases not introduced in the proceedings before them. The record discloses that the board did consider evidence in other cases. But as the importer introduced other records of reappraisement, it may be assumed that these records were the ones to which the board made reference. But we again repeat that the board on reappraisement is entitled to use information acquired by them on previous appraisements. It is an appraising body and is not a judicial tribunal. Wolff v. United States (1 Ct. Cust. Appls., 181; T. D. 31217).

This case is clearly distinguishable from Lewisohn v. United States (5 Ct. Cust. Appls., 204; T. D. 34329), relied upon by the importers. That case disclosed the fact that the addition to the invoice value resulted from a mere construction of the terms of the invoice. The facts not being in dispute, the reappraisement board having by its findings entered simply "prices as invoiced," it became a question of law what the invoice legally imported.

The present case is ruled by our own decisions in Wolff v. United States, supra; Harris v. United States (3 Ct. Cust. Appls., 5; T. D. 32286), and Oelrichs v. United States (2 Ct. Cust. Appls., 355; T. D. 32091).

The board of reappraisement not having been shown to have proceeded upon the wrong principle, and having had jurisdiction of the subject of the proceedings, the classification board committed no error in sustaining the action of the board of reappraisement.

The decision is *affirmed*.