UNITED STATES *v.* ROBINSON & CO. (No. 2225).[1]

REAPPRAISEMENT FEE.

The direction of paragraph M, Section III, tariff act of 1913, for the payment of a fee within *two* days after filing an appeal to reappraisement is jurisdictional. Neither the collector nor anyone else can impliedly or expressly waive compliance with it. Substantial compliance is not enough. Where the fee was paid *three* days after filing, the judgment of the single general appraiser on the importers' appeal to reappraisement and that of the board of three on the collector's appeal to re-reappraisement were void—not merely voidable. Such a judgment, decree, or finding may be attacked in any judicial tribunal in any other cause at any time the question arises. The collector's liquidation based on the report of the local appraiser was not a collateral, but a direct attack on the re-reappraisement. Goods were appraised above their entered value May 3, 1920. Supplementary notice of appeal was filed May 7, and the fee paid May 10. The collector treated the appeal as perfected. Reappraisement sustained the entered value. The collector appealed to re-reappraisement and the entered value was again sustained. The collector then liquidated on the basis of the original liquidation and assessed additional duty for undervaluation, treating the reappraisement and re-reappraisement as void because the reappraisement fee had not been paid in time. The judgment of the Board of United States General Appraisers sustaining the protest is reversed.

---

[1] T. D. 40062.

United States Court of Customs Appeals, March 3, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8569 (T. D. 39268).

[Reversed.]

*William W. Hoppin,* Assistant Attorney General (*Pelham St. George Bissell,* special attorney, of counsel), for the United States.
*Allan R. Brown* for appellees.

[Oral argument May 9, 1923, by Mr. Hoppin and Mr. Brown.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BLAND, Judge, delivered the opinion of the court:

Goods entered by appellees under the tariff act of 1913 were appraised at 15 per cent above their entered value by the appraiser who returned the invoice on May 3, 1920. Appellees attempted to appeal by filing supplementary notice of appeal to reappraisement on May 7, and on May 10 paid $1 to the collector, who received it and treated the appeal as completed. The single general appraiser on reappraisement sustained the entered value. The collector took an appeal to re-reappraisement where the reappraised or entered value was affirmed. The collector, in the final liquidation of the entry, assessed duty on the original appraised value and assessed additional duty because of the advance over the entered value, refusing to liquidate upon the reappraised value on the ground that the reappraisement and the re-reappraisement proceedings were void because the fee had not been paid within two days, as required by paragraph M of Section III of the act of 1913. The importers protest the action of the collector and contend that the entry should be liquidated in accordance with the finding of value by the board.

The collector states that the time for moving for a rehearing after the finding in the re-reappraisement by the board of three had expired before he had taken notice of the date of filing fee.

The board, sitting in classification, in its ruling opinion, referring to the jurisdictional question raised, held that—

It is our duty, however, to give a liberal construction to those provisions of law out of which grow the board's power to ascertain and determine the market value of imported merchandise, and to ascertain and determine the correctness of the classification of said merchandise and the assessment of duty thereon. * * * We are inclined to the view that in a reappraisement proceeding, the board's jurisdiction being expressly statutory, jurisdiction should not be denied when the express statute which creates it has been *substantially* complied with. [Our italics.]

We hold that this is a wrong conclusion of law.

Paragraph M of Section III of the tariff act of 1913 in part is as follows:

* * * If the collector shall deem the appraisement of any imported merchandise too low, he may, within sixty days thereafter, appeal to reappraisement,

which shall be made by one of the general appraisers, or, if the importer, owner, agent, or consignee of such merchandise shall deem the appraisement thereof too high, and shall have complied with the requirements of law with respect to the entry and appraisement of merchandise, he may within ten days thereafter appeal for reappraisement by giving notice thereof to the collector in writing. *Such appeal shall be deemed to be finally abandoned and waived unless within two days from the date of filing thereof the person who filed such notice shall deposit with the collector of customs a fee of $1 for each entry.* [Italics ours.]

The importers had 10 full days from May 3 in which to file their written notice of appeal. They filed it on May 7.

The statute also says in no uncertain or indefinite terms:

Such appeal shall be deemed to be finally abandoned and waived unless within two days from the date of filing thereof the person who filed such notice shall deposit with the collector of customs a fee of $1 for each entry.

The importers could have waited until the tenth day, and then they would have had two days in which to file the fee, but they filed the notice on the fourth day, and in order to complete the appeal they should have filed the fee within two days from that date.

The only right given litigants in appeal is in the wording of the statute, and it contains nothing that would authorize an extension of the 2-day period on the ground that the entire 10-day period had not expired. Under the express wording of the statute, we are not justified in stating that a filing of the fee on the third day after the notice of appeal is a substantial compliance with the act, or that anyone may waive, change, or extend its plain provisions.

It seems clear to us that there was no appeal to reappraisement or to re-reappraisement, and that the single general appraiser and the board of three sitting in re-reappraisement were without any jurisdiction whatever, and that their acts were void. It follows that the collector was entirely within the law and within his limitations under the law when he refused to liquidate in accordance with the void re-reappraisement. If the reappraising bodies had no jurisdiction, the collector's acts before them were of no effect; his laches, neglect, or silence could not alter the plain mandate of the statute. The statute itself had dismissed the appeal; he could not revive it by any act of his. He could not waive the time limit; the law under which they were attempting to function had already dismissed the appeal.

The words "shall be deemed to be finally abandoned and waived" should be noted carefully. No discretion is given to anyone. No officer of the Government, nor any judicial tribunal, is given discretionary power with reference to the appeal. If the fee is not paid within two days after the notice, it is adjudged by the law that the appeal is not in existence, and the rights given have passed.

"Deemed," "abandoned," and "waived" mean, according to Webster's New International Dictionary, as follows:

Deem: To sit in judgment over or upon; to judge; also to pronounce judgment upon, to decide.

Abandoned: To relinquish or give up with the intent of never again resuming or claiming one's rights or interests in; to give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in.

Waive: To throw away; to relinquish voluntarily, as a right which one may enforce if he chooses; to abandon or forsake.

That the failure to file the fee within the time specified by the act leaves the single general appraiser and the Board of General Appraisers sitting in re-reappraisement without any jurisdiction whatever, is, we think, definitely decided by the cases of Sugar Products Co. v. United States (10 Ct. Cust. Appls. 179, 181; T. D. 38649) and Carriere v. United States (163 Fed. 1009; T. D. 28957).

In the Sugar Products case the $1 fee was not paid in time, and the action of the single general appraiser, the board of three, and the Board of General Appraisers in dismissing the appeal on motion of the Government makes that case, with the exception of the question of the delay in making the motion to dismiss, on all fours with the case at bar. Judge Barber, in delivering the opinion of the court, said:

It is really immaterial whether we regard the giving of the notice as constituting the appeal or as a preliminary step thereto to be supplemented and perfected by the deposit. In either view the provision is mandatory that "unless within two days" the deposit is made, "such appeal shall be deemed to be finally abandoned and waived." If deemed abandoned and waived there is no pending appeal. The real status of the matter is the same as if the notice had not been given.

Nor is this inconsistent with importer's theory as to the legislative intent in enacting the provision under consideration, concerning which counsel argues that Congress intended thereby to discourage frivolous appeals, the taking of which serves to congest the files of the Board of General Appraisers, and that requiring the deposit was for the purpose of evidencing the good faith of an importer in taking an appeal. We are unable to see how, if the interpretation of the statute claimed by the importer be sustained, this purpose is accomplished. If all that an importer is required to do is to give his notice and then deposit the fee any time before the appeal comes on for hearing, it is clear that in many instances a long time would elapse between the taking of such an appeal and the manifestation of the importer's good faith in taking it. Indeed, no one but the importer could know whether the appeal was taken in good faith until it came on for hearing before the proper tribunal.   *   *   *

We regard the provision of the statute that unless the deposit for each entry is made within the two days the appeal shall be abandoned and waived as mandatory, and that in any subsequent proceedings attempted in such a case no other course is open than to so regard the alleged appeal. That has been done in this case.

As the Board of General Appraisers in disposing of the matter well said:

The limits of time within which the appeal must be filed and the deposit of the fee made are definite limitations of the statute which no judical tribunal may extend. (Citing authorities.) To pretend to do so would be in effect to usurp the legislative functions of the Congress.

And to this it may well be added that to ignore this express declaration of congressional will would be either to regard the same as meaningless or to deliberately deprive it of effect.

In Carriere *v.* United States, supra, United States Circuit Judge Knappen in construing the following statute—

That if the owner, importer, consignee, or agent of any imported merchandise, or the collector, or the Secretary of the Treasury, shall be dissatisfied with the decision of the Board of General Appraisers, * * * they or either of them, may, *within thirty days next after such decision, and not afterwards,* apply to the Circuit Court of the United States within the district in which the matter arises, for a review of the questions of law and fact involved in such decision. Such application shall be made *by filing in the office of the clerk* of said circuit court a concise statement of the errors of law and fact complained of (26 Stat. L., p. 138, ch. 407, sec. 15; U. S. Comp. St. 1901, p. 1933). (Italics ours)—

said:

The 30-day period had thus elapsed when the application for review was made. An application on the 31st day after the decision was not in time. (Citing authorities.)   (P. 1010.)

A motion to dismiss the application is made by the district attorney on behalf of the United States, upon the ground that it was not made within the period limited by statute therefor. If this application were one addressed to the discretion of the court, I should be loth to exercise it in favor of such dismissal, coming, as it does, upon final hearing of the case, and raised, as it is, only by brief of counsel. If, however, the failure to apply for a review within the statutory period is jurisdictional, no case for the exercise of discretion is presented. (P. 1009.)   * * *

This statute is mandatory and its observance is essential to the conferring of jurisdiction upon this court. The dismissal of appeals and writs of error because not taken within the period limited by statute is expressly based upon a lack of jurisdiction in the appellate court. (Citing authorities.)   * * *

A delay of one day beyond the statutory period is thus as fatal as a longer period. (Citing authorities.)   * * *

Going to trial upon the merits does not have the effect to waive the lack of jurisdiction. In Stevens *v.* Clark (10 Ct. Cust. Appls. 379; 62 Fed. 321) it was held that by going to trial upon the merits an appellee could not waive lack of jurisdiction resulting from failure to take a proper appeal within the prescribed time.   * * *

In Credit Co. *v.* Arkansas Railway Co. (128 U. S. 258), and in Edmonson *v.* Bloomshire (74 U. S. 306), the question of jurisdiction was raised by the court upon its own motion and upon hearing on the merits.

The above authorities alone would seem to so definitely dispose of the question of jurisdiction and of waiver by the collector as to require no additional citations from the abundance of authorities.

There being no jurisdiction, the actions of the single general appraiser and the board of three were absolutely void and not voidable.—Atlantic Transport Co. *v.* United States (5 Ct. Cust. Appls. 373; T. D. 34872).

In the Atlantic Transport case, the court said:

It would seem, however, that the court may at any stage raise the question of jurisdiction of the subject matter, and should do so, and that the determina-

tion of the trial court that it has jurisdiction adds nothing to the force of its judgment. See Brown on Jurisdiction (second edition, sec. 26, at pp. 131 and 132), where it is said:

> If the court lacks jurisdiction over the subject matter of the controversy, all the authorities agree that the judgment is void, however honestly it may believe it is acting rightfully, whatever may be the recitals of its record, however formal may be its acts, or however judicious its conclusions. If it lacked power to perform the judicial act it undertook, its findings that it had jurisdiction adds nothing to the verity of its pretended judgment. Its power was usurped and its finding that it possessed the power in no way confers it.

It is very ably and earnestly urged by the learned counsel for the importers that regardless of the question as to whether the trial tribunals below had jurisdiction or not, the jurisdictional facts were before them and their findings presume that they determined from the facts that they had jurisdiction, and that their decision can not be attacked collaterally, and that the issue raised by the Government in the case at bar is collateral. He also contends that the record in this case shows affirmatively that the requirements of the statute governing appeals were in fact complied with.

The jurisdictional fact, to wit, the filing of the fee three days after notice of appeal was evidently considered by the board of three sitting in re-reappraisement. The opinion of the Board of General Appraisers while sitting in re-reappraisement is found in T. D. 38667 (G. A. 8421). There, it seems from reading the opinions, that it was admitted that the stamp showed that the fee was filed on May 10, and no suggestion that the fee was paid on an earlier date was made, and the board holds that the Government should have raised the question before the single general appraiser, so as to give the importers the chance to contradict the evidence of the "rubber stamp." The board's decision proceeds upon the theory that the Government's counsel "either actively waived or passively ignored the defect" (namely, the jurisdictional fact), "and taken chances on two trials," and were estopped from raising the question successfully in subsequent proceedings. The board did not find that the fee had been paid within two days. On the contrary, if their decision can be said to make a finding on the question, it was at least by implication that the fee was not paid until on the third day, and that they had jurisdiction to consider the case owing to the waiver of the defect by the Government. General Appraiser Adamson reasons:

> If the importer should be deemed to have waived the appeal, if the fee was not paid, the Government may be deemed to have waived the objection to the defect—

and again:

> The Assistant Attorney General fails to cite any authority conferring upon this board original jurisdiction to consider and dispose of any such application and the gist of his application is an insistance on the importance of jurisdiction, and, if the board had no power to consider and dispose of the appeal if the point

had been raised by a motion in the first instance, how could the board now acquire jurisdiction to hear and determine a motion to dismiss that appeal if the case were reopened? If the whole proceeding is null and void, it may be so regarded everywhere, and the matter needs no action by this board. (T. D. 38667; G. A. 8421.)

It is true that the jurisdictional fact, i. e., the date of the fee, could have been shown by evidence at the trial, and if the importers could have successfully proved the filing to have taken place within the two days, it is an unfortunate and regrettable position into which they have been thrown. Yet, where all the evidence in the record shows the filing to have been on the third day, and the case comes to us on that question, we can not.permit our regrets to influence our declarations upon legal principles.

In further answer to the contention that the record in the case shows that the requirements of the statute regarding appeals were complied with, it should be noted that the record now before this court establishes without contradiction that the reappraisement fee was not deposited with the collector until the third day after the date when the appeal to reappraisement was filed. In the first place the collector made and recorded a finding to that effect and incorporated it in his official report to the classification board. It is of course elementary that the collector's findings and decisions are presumed to be correct, and that at the trial of a protest against them the burden of proof upon disputed questions rests upon the protestant. Therefore in this case, if the importers had intended to dispute the collector's findings relative to the date of the deposit they should have submitted their evidence upon the subject to the classification board at the trial of the protest. The record, however, discloses that the importers made no such contention before the classification board, and introduced no evidence at all at the trial. Furthermore, the importers' attorney there conceded that the reappraisement fee had not been deposited within the two-day period. Consequently, the board in its ruling opinion rightly accepted it as an established fact that the fee had not been deposited with the collector until the third day after the notice of appeal was filed. It is manifestly too late to raise any question of fact upon that subject now, and the legal effect of the belated deposit has already been declared.

Prior to the tariff act of 1922, reappraisements were not subject to review by the classification boards or the courts by means of a direct appeal or writ of error. Nevertheless they were subject to be impeached where the appraisers proceeded upon a wrong principle, contrary to law, or transcended the power conferred by statute, or failed to comply with statutory provisions.—Muser *v.* Magone (155 U. S. 240, 247), United States *v.* Passavant (169 U. S. 16), Loeb *v.* United States (1 Ct. Cust Appls. 385; T. D. 31479), Tilge *v.* United States (id. 462; T. D. 31507). It must be conceded that a reappraise-

ment made without a lawful appeal therefor would fall within the foregoing condemnation. The remedy against such illegal reappraisements was not confined to the importers only, but was extended to the collector as well. Accordingly if the objection to the reappraisement came from the importers, they were permitted to file a protest against the liquidation upon the ground that it was illegal. On the other hand, if it was the collector who contended that the reappraisement was illegal, he could refuse to adopt it when liquidating the entry, leaving the importers to protest, should they desire to defend the reappraisement. It is plain that no other remedy against an illegal reappraisement would be available to the Government under such circumstances, for if the collector adopted such reappraisement as the basis of his liquidation the Government would be foreclosed thereby, since the collector could not file a protest against his own liquidation.

The protests in both classes of cases were triable alike upon evidence the same as other protests before the classification boards. At the trial of such an issue the reappraisement in question would be presumed to be lawful and correct (United States v. Bradshaw & Co., 5 Ct. Cust. Appls. 121; T. D. 34168), and that presumption would prevail unless overcome by positive, clear, and certain proof to the contrary (United States v. Johnson Co., 7 Ct. Cust. Appls. 466; T. D. 37050); but if the facts establishing the illegal character of the reappraisement in question were satisfactorily proved before the classification board it would be the board's duty to reject the reappraisement (United States v. Loeb, 107 Fed. 692); and if in cases like the instant one the importers themselves conceded before the classification board the existence of facts from which the illegal character of the reappraisement appeared, that board should sustain the action of the collector in rejecting the illegal reappraisement.— United States v. Scanlan (5 Ct. Cust. Appls. 290; T. D. 34473).

In the absence of these remedies neither the importers nor the collector could have obtained relief under former tariff acts against illegal or void reappraisements, since a direct appeal therefrom to the classification board or the courts was not allowed. And if no remedial procedure at all had been provided or allowed it would have been idle for the courts to say that reappraisements were subject to be impeached "where the appraisers proceeded upon a wrong principle, contrary to law, or transcended the power conferred by statute, or failed to comply with statutory provisions."

The issue in this case is of the foregoing character, the importers claiming the reappraisements to be valid, while the collector refused to adopt them because of his claim that they were illegal and void. The issue therefore was not a collateral attack upon the reappraise-

ments but a direct impeachment of them for illegality by the only means then allowed by law. Moreover, the illegality of a reappraisement could be proved before the classification board by facts dehors the record of the reappraising officers, and without the introduction of such records in evidence.—United States *v.* Loeb (107 Fed. 692). These considerations apply with peculiar force to the present case, since the deposit of the jurisdictional fee was required to be made with the collector, and therefore the only fact involved in the case was one which took place before him and became a part of his official record. When he came to liquidate the entry, he was necessarily compelled to decide whether to accept the local appraiser's valuation of the merchandise or that of the reappraising officers. And when he found from an examination of his records that no statutory appeal to reappraisement had been taken, he was bound to adopt the local appraiser's return. That action, however, was of course subject to review upon protest, and such a review necessarily required the classification board to pass upon the legality of the appeal to reappraisement. Its decision thereon was of course appealable to this court, and neither the classification board nor this court can be ousted of its jurisdiction in the case by the conclusions, if any, reached by the reappraising officers regarding the legality of the appeal.

In the next place, it may be observed that the question before us, rightly stated, is whether within contemplation of law there were any reappraisements at all in the present case. In other words, this appeal does not really call for a review of the reappraisements as such, nor does it question any ruling of the reappraising officers in relation to the merchandise or its value, but it challenges the authority of the reappraising officers to act at all under the circumstances. The issue therefore does not depend upon the proceedings which were had before the appraisers, but upon those had before the collector. For if there was no legal appeal taken before the collector, it would follow that the reappraising officers possessed no authority at all to deal with the merchandise, and their attempt to reappraise it was simply null and void. This principle was expressed in relation to reappraisement boards by the Circuit Court of Appeals, Second Circuit, in the Loeb case, supra, in the following words, viz:

As the board of three general appraisers is a special tribunal, and derives its jurisdiction from a compliance with the statutory requirements conferring it, it is undoubtedly true that its acts and decisions are coram non judice, unless the jurisdiction has been invoked pursuant to the terms of the statute by which it is conferred.

Therefore, if the jurisdictional requirements of the statute were not complied with there was no reappraisement within the sense of

the statute. This court when dealing with an analogous case, in Maddaus *v.* United States (3 Ct. Cust. Appls. 330; T. D. 32623), said:

> The statute entitles the importer, or the Government, to an appraisement by a single general appraiser or a board of general appraisers proceeding according to law. The decision thus had become final, and neither the board nor this court can review the same. Until, however, the jurisdictional requirements of the statute have been complied with or satisfied there is no "decision" within the statute of a single general appraiser or a board of three general appraisers. The review sought, therefore, is not a review of the decision itself, but a review of the legal power of the general appraiser or board of general appraisers to render that which without such power duly exercised does not become the "decision" contemplated made final by the provisions of the statute. (P. 332.)

While this court has held in United States *v.* Kurtz, Stubbeck Co. (5 Ct. Cust. Appls. 144; T. D. 34192) that the Board of General Appraisers in classification is a judicial tribunal, and has also held in Shallus *v.* United States (5 Ct. Cust. Appls. 317; T. D. 34525) that the Board of General Appraisers in re-reappraisements is not a judicial tribunal, it is not necessary for us to determine whether the decision rendered by the Board of General Appraisers sitting in re-reappraisement is such a decision as would come within the inhibition of the rule of collateral attack. We think, however, that the question of the timeliness of depositing the fee is squarely and properly before us, and that it is a jurisdictional question, and the question being properly before us, it can not be ignored. In the case at bar, the single general appraiser and the Board of General Appraisers in re-reappraisement proceeded without authority of law and contrary to law in so far as they had no jurisdiction whatever in the case. The same parties, the same case, and the question of appraisement or reappraisement are before this court as were before the lower tribunals, and the question of appraisement is necessarily involved here as it was in the lower tribunals. This court is not setting aside a decree of the lower tribunals upon their weighing of facts in determining appraised value. The statute creating and giving power to the lower tribunal sets aside the decision for the reason that it denied it any jurisdiction whatever to determine the facts unless certain conditions were complied with by the litigants within a certain specified time. The void judgment amounts to nothing, and it is as if it did not exist. Neither the Board of General Appraisers nor this court can vest the appraising tribunal with a power which has been denied it by Congress. Congress exercised its right in fixing a definite limit of time in which an appeal could be perfected. No agreement or silence by the parties can confer jurisdiction where the legislative intent is plain that no jurisdiction shall vest.

It might be well to add that if it were admitted that the Board of General Appraisers sitting in re-reappraisement was a judicial tri-

bunal, and if it were further admitted that the attack on its decision in this case was collateral, we do not think such attack would be in contravention of the rule against collateral attacks on decisions of judicial tribunals, for the reason that the finding of the Board of General Appraisers sitting in re-reappraisement in this case was absolutely void for want of jurisdiction. It was not voidable, but void— a nullity with no more force and effect than if it had not been entered. Such a judgment, decree, or finding may be attacked in any judicial tribunal, in any other cause, at any time the question arises.—Lincoln *v.* Tower (15 Fed. Cas. No. 8355; 2 McLean 473); Moore *v.* Edgefield (32 Fed. 498); Thompson *v.* Whitman (85 U. S. [18 Wall.] 457).

The judgment of the Board of General Appraisers in re-reappraisement we think clearly shows on its face a lack of jurisdiction, and that the jurisdictional question raised was erroneously decided in favor of the importer upon the theory that the Government had waived it.

The judgment of the Board of General Appraisers is *reversed.*

### DISSENTING OPINION BY SMITH, JUDGE.

I regret very much that I find myself unable to agree with Judge Bland's opinion in this case.

It is undisputed that the entered value of merchandise imported by Robinson & Co. was advanced 15 per cent by the local appraiser. Within 10 days thereafter the importers filed their notice of appeal to reappraisement and deposited with the collector the statutory fee of $1. Thereupon the invoice and the appraisement of the merchandise described therein were forwarded to the general appraiser for reappraisement.

The general appraiser declined to approve the advance made by the local appraiser and reappraised the importation at its entered value. From that reappraisement the collector of customs took an appeal to re-reappraisement and the board of three general appraisers, sitting as a board of re-reappraisement, and not as a classification board, finally appraised the merchandise at its entered value as found by the general appraiser.

Notwithstanding the fact that the board had jurisdiction to appraise and that its appraisement became final and conclusive on the parties litigant, the collector in effect declared that his appeal to re-reappraisement had not come on to be heard in regular order and claiming that the records of his office showed that the $1 fee had not been paid within two days after importers' notice of appeal to reappraisement, he held that the board's decision was void.

Paragraph M vests three general appraisers with judicial functions and expressly provides that their decision * * * "in all reappraisement cases shall be final and conclusive against all parties

and *shall not be subject to review in any manner for any cause in any tribunal or court."*   (Italics not quoted.)   Nevertheless, in the teeth of that provision the collector did review their decision which definitely determined the dispute between himself and the importers and by a stroke of the pen nullified their final appraisement, thereby sustaining the appeal which he himself had taken.

If the board was not authorized by law to appraise or if it had appeared from its *decision* that no appeal had been taken or that the appeal was not taken in time or as prescribed by statute, the collector might, with a better grace, have regarded the board's judgment as void and of no effect.   He could not, however, challenge the judgment of the tribunal of last resort in appraisement cases as to matters dehors the record of that tribunal or because of an issue of fact which it had jurisdiction to determine and which whether *correctly* or *erroneously* was finally decided against him.

The record in the reappraisement proceedings was not offered or admitted in evidence on the hearing of the importers' protest by the classification board, a tribunal exercising a jurisdiction entirely different from that of the re-reappraisement board the decisions of which are not subject to review or appeal.   *The only evidence submitted to the classification board as to the time of the payment of the $1 fee was the report of the collector, representing one of the parties litigant. Beyond that there is no evidence of any kind, nature, or character showing or tending to show that the fee of $1 was not paid within the time prescribed by law.*   For all that appears in the transcript officially certified to us as a true record of the papers and evidence produced to the classification board for its consideration, the general appraiser and the re-reappraisement board may have found that the collector's record was incorrect and that the notice of appeal was filed and the $1 fee paid in due time.

When a court has jurisdiction of the subject matter and the parties, its judgment as to every issue *of fact raised as to its jurisdiction is absolutely binding* until set aside by the court which pronounced it, or by appeal or writ of error.—Hendrick *v.* Whittermore (105 Mass. 23, 29); United States *v.* Kurtz (5 Ct. Cust. Appls. 144; T. D. 34192); United States *v.* Saunders (5 Ct. Cust. Appls. 270; T. D. 34446); United States *v.* Johnson (7 Ct. Cust Appls. 466; T. D. 37050).

As the general appraiser and reappraisement board had jurisdiction to decide all questions of fact as to their jurisdiction, the appraising tribunals having heard the appeals of the importers and the collector, it must be presumed that they conformed to the law governing such appeals and reached a correct conclusion on the record and evidence before them as to their validity.—Hilton's Administrator *v.* Jones (159 U. S. 584); Gray *v.* Brignardello (1 Wall. 627, 634); Grignon's Lessee *v.* Astor (43 U. S. 318, 338); Rankin *v.* Hoyt (4

How. 327–334); Philadelphia & Trenton R. R. Co. *v.* James Stimpson (14 Pet. 448, 457); Ex parte Watkins (3 Pet. 191–201–202); Ex parte Riddle (255 U. S. 450); Ex parte Riddle, decided by the Supreme Court, May 21, 1923. To permit a review of a decision of appraisers on the ground that the decision was erroneous, mistaken, or incorrect or was induced by a wrong conception of the facts, would strip the appraisers of their usefulness and render futile the system designed by Congress for the prompt collection of the revenues.— Wolff *v.* United States (1 Ct. Cust. Appls. 181; T. D. 31217); Hilton & Another *v.* Merritt (110 U. S. 97–107); Auffmordt *v.* Hedden (137 U. S. 310–325).

The general appraiser and the re-reappraisement board had jurisdiction to appraise, and it is elemental that the judgment of a tribunal having jurisdiction of the subject matter can be impeached only by its own record or by appeal or writ of review, and then only for lack of power or fraud. To hold otherwise would result in judicial chaos and nothing less. Indeed, if the collector can void an appraisement on evidence dehors the record of appraisement, why can not the importer exercise the same right and attack collaterally on evidence off the record an appraisement because the appraisers did not view samples of the merchandise or because they included in the appraisement commissions or other factors which were not lawful elements of market value? In United States *v.* Loeb & Schoenfeld Co. (7 Ct. Cust. Appls. 380; T. D. 36961), we ruled that the collector was concluded by the appraisers' dismissal of his appeal and we could not reverse their decision. How then can we review their decision and declare an appeal not taken which they heard and decided? Questions of fact are settled by the tribunal having jurisdiction of the subject matter. That rule has been repeatedly held to be applicable to the decisions of appraisers.—United States *v.* Leng (18 Fed. 15–20); United States *v.* Arredondo (6 Pet. 691–728–729); Bartlett *v.* Kane (16 How. 263, 271–272), in which case importer's appeal was withdrawn before appraisement, nevertheless, the appraisement was held valid.—Belcher *v.* Linn (24 How. 508–522).

We, ourselves, have held very positively that the decision of the reappraisement board can not be reversed on the evidence of *part* of its record.—United States *v.* Johnson Co. (7 Ct. Cust. Appls. 466; T. D. 37050). In the case before us the record of the general appraiser and of the reappraisement board was not introduced or even offered in evidence before the classification board. By what process of reasoning and on what principle of law therefore can we justify the impeachment of the decision of the reappraisement tribunals with no evidence before us other than the ex parte report of the collector of customs, representing one of the contending parties?

So much for the record duly certified to us on appeal and properly before us for consideration. Let us now see what is disclosed by the alleged record on reappraisement and re-reappraisement, which is not properly before us, inasmuch as it was not introduced in evidence before the classification board and is not incorporated in the transcript of the board's proceedings. The notice of appeal to reappraisement in those unauthenticated papers bears the date May 6, 1920, stamped in red letters on the date line. Above the date stamped in an oval are the words and figures "May 7, 1920, in 7th Division," and a blurred word of which only the final "d" and possibly the third letter from the end are legible. To the left of the oval and over the signature of Jos. M. Lease is stamped in red letters "Respectfully referred to the president of the Board of General Appraisers." In the lower left-hand corner of the notice of appeal there is stamped and *initialed* a square bearing the words and figures "reappraisement fee of one dollar paid May 10, 1920."

There is nothing of an official character on the notice of appeal or on any of the papers which discloses the date of filing the notice of appeal other than the initialed stamp in the corner bearing the words "reappraisement fee of one dollar, paid May 10, 1920," and that it was filed on May 7 is a mere assumption with practically nothing to support it. For all that we know or can know, the general appraiser and the board of three general appraisers accepted the stamped and initialed date on which the $1 fee was paid as the only evidence of the date on which the notice of appeal was filed and the fee paid. If they did, just how can their decision be set at naught because of a stamped date which has no official authentication whatever? If it were established by evidence that uninitialed and unsigned declarations stamped on customs papers indicated official action or that the words "Received May 7, 1920, in 7th Division" stamped on a notice of appeal, but not signed or initialed denoted that the appeal was filed in the customhouse on May 7, 1920, that date might be accepted prima facie as the date of filing. No such showing was made, however, and to find that the appeal was filed on May 7, 1920, we must assume judicial knowledge of a custom the nonexistence of which is demonstrated by the papers themselves, from which it appears that official action is verified either by initials or by the full signature of customs officers.

The first duty of the general appraiser and the board of three general appraisers was to determine whether they had jurisdiction to hear the appeal, and as nothing appears on the face of the papers which officially impeaches their exercise of jurisdiction, it would be going far indeed to hold that they were without jurisdiction because of a stamped date which bears no evidence whatever that it was officially made.

The decision of the general appraiser recites that he proceeded according to the law governing appeals to reappraisement and the decision of the board of three general appraisers expressly finds that the appeal to re-reappraisement came on to be heard "in regular order." I find absolutely nothing anywhere of an official character in the reappraisement papers which would warrant us in saying that the appraiser did not proceed according to the law governing appeals to reappraisement or that the appeal to the reappraisement board did not come on to be "heard in regular order."

Even if the notice of appeal had been *officially* stamped as filed on May 7, 1920, such stamping of the notice would not be conclusive but merely presumptive evidence of the date of filing and its verity might be put in issue before the tribunals exercising exclusive powers and judicial functions in the making of reappraisements. If it was put in issue and General Appraiser Adamson's opinion, though not evidence, says that it was, it is perfectly evident to me at least that the decision of the general appraiser and of the board of three general appraisers must be regarded as absolutely conclusive and not subject to review by this court or any other tribunal in any manner or for any cause. See paragraph M.

It is not disputed that a final conclusive decision of the re-reappraisement board rendered on the appeal of the collector and perfectly valid on its face beyond the peradventure of a doubt, was transmitted to the customhouse, where it was stamped as follows: "Refund voucher sent to auditor—J. M. L. Mar. 1, 1921. Note. reappraisement fee of $1.00 paid. Take duty as per reappraisement J. M. L." Subsequently that notation was penciled out and the following substituted "Re-appt. & re-reappraisement void. Fee not paid within 2 days. Par. M, sec. 3, act 1913, 3/7/21. E. J. A."

From those notations it is apparent that the collector representing the Government, a party to the proceeding, paid scant respect to the judgment of the judicial tribunal to which he had appealed and which had final exclusive jurisdiction to appraise. More than that, he vested himself with the right to review a re-reappraisement decision against him which disclosed no jurisdictional defect and thereby exercised a power denied by the express terms of the statute to every court and judicial tribunal in the country. *If the collector can do that, then the collector, not the board of reappraisement determines the jurisdiction to appraise and the collector's records, not the board's final judgment, is conclusive as to the waiver and abandonment of an appeal to reappraisement.* Whether the notice was or was not filed on May 7 was a question of fact and if that question is finally determinable, not by the re-reappraisement board, but by the collector and the collector's records, then a decision of this court sustaining the reappraisement may also be disregarded by the collector.

The evident purpose of the statute providing for appeals to reappraisement is to prevent delays. It is admitted that the importers filed their notice of appeal and paid the fee of $1 within 10 days after the original appraisement. All of the steps to perfect the appeal were therefore taken within 2 days less than the statutory time allowed. If as a matter of fact the notice of appeal had been filed on the 7th of May and the $1 fee paid on the 10th of May, it was certainly within the power of the collector to refile the notice and the collector having officially stamped on the notice of appeal that the fee was paid on the 10th of May, I am rather of the opinion that the 10th of May might well be regarded as the date on which the notice of appeal was filed, especially as no other filing date is officially declared on the notice.

I base this dissent on the following grounds: (1) Reappraisement tribunals are judicial in character, vested with exclusive power to reappraise and with general jurisdiction in appraisement matters. Such decisions are not subject to review on appeal by any court or any tribunal in any manner or for any cause. Their decisions, therefore, can not be impeached except upon the evidence of their own record and not then on any question of fact which the appraisement tribunals had the right and the power to decide. As the record of the general appraiser and of the re-reappraisement board was not introduced or offered in evidence we have no right to say on the faith of the collector's report that no appeal was taken; (2) even if the record of the general appraiser and the board of three general appraisers were before us there is nothing of an official character on any of the papers which discloses that the importer's notice of appeal was filed on May 7; (3) if the record did disclose that the appeal was filed May 7, the file mark would be merely presumptive evidence of the fact and in the absence of the re-reappraisement record, there is no competent evidence before us of any kind which would justify us in saying that the general appraiser or the re-reappraisement board did not properly decide that the notice of appeal was filed at a later date; (4) there is officially stamped on the notice of appeal that the fee of $1 was paid on May 10 within 10 days after the original appraisement. It may well be presumed that May 10 was the date on which the notice of appeal was accepted as filed by the collector.

I am therefore of the opinion that the decision of the Board of General Appraisers should be affirmed.

### DISSENTING OPINION BY BARBER, JUDGE.

After much consideration of this case I find myself unable to concur in the majority opinion, which as I view it is based upon a misapprehension both of fact and of law. While some of my reasons

for dissenting are included in those expressed by Judge Smith, there are others the nature of which requires expression.

The main opinion opens by assuming that the importers attempted to appeal to reappraisement by filing a supplementary notice thereof on May 7 and on May 10 paid the appeal fee to the collector, but does not in that connection point out what *proof* there is of such assumed fact.

On the assumed fact, however, the opinion holds, there was no appeal to re-reappraisement; that the board of three was without jurisdiction, its acts void; and the collector justified in rejecting its appraisement in his liquidation.

The majority entirely overlook the rule of law that upon ample authority was stated in United States *v.* Bradshaw (5 Ct. Cust. Appls. 121; T. D. 34168). We there held that "It must be conceded that the appraisement of the board of three is conclusive upon all parties until shown to be contrary to law or based upon some erroneous principle. For the presumption is that the reappraising board acted in accordance with law and this presumption obtains until the contrary is lawfully made to appear."

A duly certified record of the appraisement board is before us. It is not pointed out what is contained *therein* (nor is there anything) that tends to show that its proceedings were contrary to law or based upon an erroneous principle. It is therefore necessary to establish the impeaching facts by evidence, unless they are conceded. The main opinion states that the fact of nonpayment of the appeal fee within two days was conceded by importers' counsel at the hearing before the classification board. I deny this, and, so that it may appear upon what the assumed concession is based, produce here the record in that behalf.

When the case came on for hearing before the classification board, the appearances for the importers and for the United States were entered. Immediately after which, no evidence whatever having been introduced, counsel for importers said that he would submit on the record as it stood and asked for three weeks' time in which to file a brief. Government counsel asked for a like time thereafter for reply. Then followed a comment by a general appraiser as to the time asked for. Importers' counsel then said: "It is something new. The collector declined to follow the board's reappraisement on the ground that the fee had not been paid in time. Of course I know the court has decided the payment of the fee is necessary, but at the same time it has not been before the board in this situation." A general appraiser then inquired if the board had decided it was not necessary, to which importers' counsel replied, "No. Your honor will probably recall you sat with Judge Weller as a member of Board 2 and later on after the collector had liquidated and the papers reached the naval

office somebody discovered that the fee had not been paid, and so the question raised in that way." The record next shows that it was finally agreed that the importer should have two weeks to file his brief and the Government two weeks for reply.

These proceedings constitute *all* that transpired before the classification board as shown by the record here. The briefs referred to are not before us nor are we in any way advised as to their contents. By no stretch of the imagination am I able to conclude that the record before the classification board contains the concession stated in the main opinion.

The first remark of importers' counsel was merely a statement of the ground on which the collector based his action. It was not a concession of any kind and especially was not a concession of the fact of nonpayment within the two days. The second remark was in answer to the general appraiser and called his attention to a hearing in which he had previously participated where it appeared the collector had liquidated and the naval office discovered on papers sent to it that the fee had not been paid. This statement is no concession whatever, and in this case no one claims the fee has not been paid. On just what papers the discovery was based was not disclosed.

In this court importers' counsel states in his brief that importers have never admitted that the fee was not paid in time. The correctness of that statement is not challenged by the Government. I submit that the statement in the main opinion that the concession was made is not supported by the record.

It is also argued in the majority opinion that the collector has made and returned a finding that the appeal fee was not seasonably paid, that this must be presumed to be correct, and that therefore it was incumbent upon importers to introduce before the classification board evidence tending to show that it was paid in time.

It is a novel proposition that after an appraisement has been made by a board of three, and returned to the collector with the accompanying statutory mandate that it shall be final and conclusive against all parties and not subject to review in any manner for any cause in any tribunal or court, that the collector may disregard the same, and by that act at once deprive it of its statutory immunity to attack as well as of the presumption of its correctness we have held attached thereto. It is in effect to say that the presumption of correctness that attaches to the collector's action is superior to that which inheres in the judgment of the reappraisement board. While denying this, I recognize of course that the appraisal of that board may be held void if it is lawfully made to appear that it proceeded upon a wrong principle, contrary to law, or transcended the power conferred upon it by statute, or failed to comply with statutory provisions. But to establish these

impeaching facts, unless they are conceded, the burden is upon the collector and therefore upon the Government in this case. A claim of the collector that such facts exist is not sufficient, neither can his alleged finding, made after final judgment has gone against him, fill the gap, and importers here were under no obligation to produce evidence as to the time when the appeal fee was paid.

In this connection the language of Justice Taney in Tucker et al. *v.* Kane (24 Fed. Cas. 268) is apposite. He said: "The appraisement must speak for itself and be construed by its own language; and if its validity is to be impeached by anything outside of the award it must be by testimony showing that the question referred was not decided or showing some misconduct on the part of the appraisers."

Reference in the main opinion is made to the decision of the Board of General Appraisers in re-reappraisement found in T. D. 38667, G. A. 8421, and from that opinion it is concluded that at one time it was admitted that the rubber stamp referred to in Judge Smith's dissenting opinion showed that the fee was paid on May 10.

If it is proper to refer to that decision for the purpose of finding or supporting the finding of any fact, it should be known that the question there before the reappraisement board was whether on a petition by the United States the board would open the case and vacate the appraisement here involved. The matter was heard on the petition of the Government and no evidence was introduced other than the papers before us.

The board refused to vacate its appraisement. I am clear that it does not appear by the opinion in that case that any such admission was made. The opinion is too long to justify its incorporation here, but therein it is stated, referring to the Government's petition, that "the nearest approach to the allegation that the fee was not paid in time is that it is shown by the rubber stamp dated May 10, 1920, that the fee of one dollar was paid, the appeal having been filed May 7, 1920."

Later in the opinion the board said, referring to this rubber-stamp entry and to certain erasures on the face of one of the papers before us:

The entry already referred to in the record, now defaced by zigzag pencil marks, indicates that the fee was paid, notwithstanding the rubber stamp to the contrary, though if the person who put the ink writing on that record had power to nullify the decision of the board, he probably also had power to deny that that fee was paid and mutilate that record too.

As to what is in fact shown by the so-called record of the collector that is among the papers before us, I do not care to add much to what Judge Smith has so well said. I agree with him that it is not relevant. I may say, however, that it contains, according to the collector's own statement, only a part of the record before the reappraisement board and embraces, he says, "the various pertinent facts necessary to the consideration of the protest." It was his

duty to submit the entire record. He had no authority to determine what was pertinent. He states the papers include a "supplementary notice of appeal to reappraisement." No paper so entitled is before us. When he first forwarded the papers to the general appraiser for reappraisement he impliedly recognized and adjudged that appeal had been duly taken. So far as we know he may have appealed himself. When he appealed to the board of three he recognized that there had been an appraisement made by the single general appraiser. The jurisdiction of the board of three was lawfully invoked by transmission to it of the prescribed papers by the collector.—Larzelere v. United States (5 Ct. Cust. Appls. 510; T. D. 35154). It is significant to note that the statute does not provide that in order to clothe that board with jurisdiction of an appeal it is necessary that an appeal fee must have theretofore been paid.

On this phase of the case I conclude that the record of the re-reappraisement contains nothing which tends to impeach its validity nor are any facts conceded that have that tendency. If the pretended finding of the collector, made after he received the final appraisement of the board of three, be regarded as admissible for any purpose, it fails to establish any such impeaching facts. Their existence must be shown by evidence. The collector was not vested with power to make such evidence by an alleged finding. He must prove the facts. His classification of merchandise is within his function and carries with it the presumption of correctness, but it is not so of the post mortem finding relied on here.

I venture to assert that it never has been held that after a reappraisement or a so-called re-reappraisement (each of which is but an appraisement) has been made and duly certified to the collector he can by disregarding or rejecting the same thereby create any presumption whatever that overcomes the presumption that the appraisement is valid.

There is another view of this case that to me suggests a simple and safe rule for its determination.

It is still to be kept in mind that the real question in this case is whether or not from the record it appears that the collector was justified in rejecting in his liquidation the value fixed by the appraisement board.

The only objection to the validity of its appraisal is that the jurisdiction of the single general appraiser was not legally invoked. If that be assumed, how does it affect the judgment of the board of three?

As already pointed out, there is no provision of the statute that the validity of the judgment of a board of three is contingent upon the validity of the appraisal of the single general appraiser. The

only prerequisite for an appeal by either the collector or the importer is that the former shall deem the appraisement too low or the latter that it is too high. The appeal is not required to be founded upon errors of fact or of law. The single general appraiser is not required to review the proceedings before the local appraiser nor is the board of three required to review the proceedings before either the local appraiser or the single general appraiser, or to remand the case to either of them for any purpose. The statute does not provide that the jurisdiction or the appraisement of either is to be determined by the jurisdiction or appraisement of the preceding appraiser. In any such case the tribunal making the last appraisement advises the collector of its appraisement either directly or through the general appraisers. The only purpose of an appeal is to ascertain the value of the imported merchandise and the appraisers are not for that purpose a judicial tribunal. In addition to this the statute provides that the *importers'* appeal only shall be deemed finally abandoned and waived if the fee is not deposited; not that a subsequent or any appeal by the collector shall be affected thereby, and it is an appraisement made on a collector's appeal that we are considering. If the appraisement of the board of three had been in favor of the collector could the importer on this record impeach it on the sole ground that he never had appealed or could the collector support it by a subsequent finding that in fact the deposit was made within two days?

In Origet *v.* Hedden (155 U. S. 288) the court said the question of dutiable value was not to be tried before the appraisers as if it were an issue in a suit in a judicial proceeding.

In Oelberman *v.* Merritt (123 U. S. 356) proceedings in appraisement were likened to those in arbitration.

In Burgess *v.* Converse (4 Fed. Cas. 726) an analogous principle was considered. The court said: "The call by the importer for the second appraisement on account of his dissatisfaction with the first is in the nature of an appeal; and there seems to be no good reason why, in such a case, the errors which have affected the first appraisement, which is superseded and rendered wholly immaterial by the appeal to the merchant appraisers, should be afterwards relied on or allowed to have any effect." And later, "but if he demands a reappraisement, and that is regular, he waives all objection to the first which is superseded and rendered unimportant by the second on which the law in terms requires the collector to proceed as final and binding."

In United States *v.* Loeb (107 Fed. 692) the Circuit Court of Appeals defining what constituted an appeal to the board of three said that the transmission to them of the designated papers clothed them with jurisdiction and that the case thereby came before them for examination and decision and that it was unimportant to know who was

the appellant or why he appealed. See also Loeb v. United States (1 Ct. Cust. Appls. 385; T. D. 31479).

In the matter of Wolff & Co., T. D. 29628 (G. A. 6888), the Board of General Appraisers held, "It is unnecessary for us to pass upon the irregularity or the validity of the local appraiser's action, for whatever irregularity may have occurred in that proceeding was cured by valid reappraisement."

In Beer v. United States (1 Ct. Cust. Appls. 484; T. D. 31526), it was contended that an appraisement, reappraisement, and re-reappraisement were invalid. We held, "If the re-reappraisement by the Board of General Appraisers was valid, inquiry as to the validity of preceding appraisements is unnecessary. We therefore confine our discussion of the case in the main to the proceedings before the board of three general appraisers, which, if conducted in conformity with the modes prescribed by the law, is final, and not the subject of review by any classification board of general appraisers or by this court."

In Oelrichs & Co. v. United States (2 Ct. Cust. Appls. 356; T. D. 32091), the importer appealed to the single general appraiser, then to the board of three, and then protested the liquidation upon its appraisal, claiming that the appraisal was invalid for want of jurisdiction because the collector had failed to designate the samples for examination as required by law. We held that the importer having thus invoked the jurisdiction of the appraisement board ought not to be heard to say that it could not perform its function, and citing Burgess v. Converse, supra, said "that if the importer demands a reappraisement and that reappraisement is regular, he waives all objections to the action of the local appraiser."

In the United States v. Johnson & Co. (9 Ct. Cust. Appls. 258; T. D. 38215) it was stated that, "The appeal presents an issue relating to the validity of certain reappraisement proceedings. While the issue is tendered as to the validity of the appraisement proceedings before the single general appraiser, as well as on appeal before the board of three general appraisers, in our view of the case the latter alone is here determinative."

I am unable to see why these cases do not afford a rule for the decision of the one at bar. It may be conceded for the purpose of discussion that the appraisement by the single general appraiser was not valid. I think if the proceedings had stopped there, the collector might have rejected that appraisement as a basis of liquidation and his action should be sustained if on the trial before the classification board *it was conceded or proven* that no appeal had been taken to the single general appraiser, but when the collector has invoked the jurisdiction of the board of three, as in this case, he must stand or fall upon the proceedings before that board, and unless he

proves that it lawfully proceeded, its appraisal is conclusive upon him. I do not think the three methods of appraisement provided by statute are to be likened to or determined by the rules in courts of law regulating appeals from an inferior to a higher tribunal. Each of these appraising bodies has but one duty to perform and that is, to ascertain the value of the importation. They each proceed de novo and the judgment of one is not to be determined by the jurisdiction or judgment of the tribunal that has already functioned in the matter.

The rule of the majority opinion results in this: The collector may, in liquidation upon an appraisement found valid by the classification board and this court, proceed to reexamine papers in his files, conclude and make a pretended finding that such papers should be differently interpreted than he first thought and found, reverse his first finding, make another directly opposite and thereby cast upon importer the burden of further litigation in which the papers and facts pertinent to be considered are such only as the collector in advance determines.

Such powers are not his.

The majority opinion closes in part with the statement: "The judgment of the Board of General Appraisers in re-reappraisement we think clearly shows on its face a lack of jurisdiction."

As an answer to this and without comment, I insert the material part of that judgment. It bears the proper title of the case and then states: "The foregoing appeal for re-reappraisement on merchandise described in the within invoice coming on to be heard in regular order before Board Three and after having proceeded according to the law governing such appeals, and upon the testimony and facts disclosed by the record, we do find that the actual dutiable value or wholesale price of the merchandise at the time of exportation in the principal markets of the country from whence exported, was as follows: Reappraised value affirmed. And we do hereby determine the value of such merchandise accordingly."

I would affirm the judgment below.