(C. D. 1682)

HOYT, SHEPSTON & SCIARONI *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 17, 1955)

*Lawrence & Tuttle (George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*Samuel D. Spector* and *Mollie Strum,* trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: The protests in this case refer to a San Francisco warehouse entry, No. 557, covering 200 bales of wool on the skin, imported from Uruguay on or about November 29, 1947. According to the entry, the net weight of the merchandise was 211,734 pounds, and the clean content of the wool, estimated at 25 per centum, was 52,933 pounds. It was entered under paragraph 1102 of the Tariff Act of 1930 at 32 cents per pound, or a total of $16,938.56. The entry was liquidated on November 30, 1948, and duty was assessed on 70,423 pounds of wool at the rate of 24 cents per pound under said paragraph 1102, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, or a total of $16,901.52.

Although the entry was liquidated on November 30, 1948, the protests were not filed until March 2, 1949, and September 30, 1949, respectively, and the Government moved to dismiss them on the ground of untimeliness. Plaintiff contends, however, that the papers relating to the liquidation were not made available to the importer until February 15, 1949, and that, therefore, the liquidation was incomplete until that time.

In the first protest, it is claimed that the liquidation was based on 238 bales of wool, whereas the entry covered only 200 bales; that numerous attempts were made to obtain the records in this transaction, but that they were not available, and it was requested that the liquidation be set aside in order to permit the filing of a protest.

The second protest was made against the collector's decision refusing to liquidate and to post a notice of liquidation, in accordance with the law and regulations. It was further claimed that improper posting misled the importer and that the weight on which the liquidation was based was erroneous in that it included 40 bales of wool covered by other entries.

In support of its contentions, plaintiff, a firm of customhouse brokers, called Edward Christian Binder, one of the partners, and

John Henley Matthews, a clerk. According to these witnesses, in 1948, room 217 in the collector's office in San Francisco was set aside as a place where brokers might copy liquidations, and to each broker a file drawer was assigned in which customs officials deposited liquidated entries, together with the papers pertaining to the entries, such as the carrier's certificate, the permit, and the invoice.

The witnesses testified that the notice of liquidation of the present entry was posted on the bulletin board on November 30, 1948, and that they, subsequently, tried to obtain the entry papers in order to copy the liquidation. The witness Matthews stated that the entry was not placed in his firm's drawer after November 30, 1948, and that, beginning with December 10, he went to the warehouse division once a week and asked for it. The witness Binder said that he also went to the warehouse division and asked the clerk for the file, but it could not be located. He stated that he made at least a dozen inquiries between November 30, 1948, and February 15, 1949, when the papers were finally obtained. The witness explained that, in 1948, Mr. Halvorsen, now deceased, was the ledger clerk in the warehouse division and that, following liquidation, invoices and entries came to him. He added:

At the particular time that this liquidation was under observation by myself, there was a change of personnel in the warehouse division, which resulted in a backlog and at the time that I made inquiries for this file, Mr. Halvorsen had several hundred warehouse entries in front of him which were undergoing transferring to the ledger sheets.

Neither of the witnesses made any inquiries of the other clerks or of Halvorsen's superiors, giving as reasons that that had never been necessary in the past; that the duties of the other clerks in the warehouse division were not similar to Halvorsen's; that Halvorsen had the books; and that the normal channel was for warehouse entries to come to his desk.

The notice of liquidation which was posted on November 30, 1948, was received in evidence as plaintiff's exhibit 1. It includes the present entry in a list of warehouse entries, liquidated on November 30, 1948, with a decrease.

The witness Binder testified that a decrease in duty was expected because of the reduction in the rate of duty by reason of the trade agreement. He explained, further, that duty was paid on the basis of the reduced rate, but that, in connection with wool, there is usually an adjustment after determination of the clean content and the fineness of the wool, and that, in most instances, those two factors are estimated higher than the figures shown on liquidation. He stated that from the notice of liquidation itself he had no way of knowing whether an error had been made and that any protest filed would have been frivolous or speculative. He added that had the file been

available within the normal time after liquidation, the importer would have received a copy of the liquidation and would have noticed that there was an error, since the weight on liquidation was greatly in excess of the entered weight.

According to this witness, it was not until a demand for additional duty was received, about February 10, 1949, that he felt there was something wrong with the weight used on liquidation.[1] Consequently, he conducted an investigation to ascertain the cause for the excess weight and came to the conclusion that 38 bales not covered by this entry were, nevertheless, assessed with duty thereunder. He explained:

At the time that this merchandise was withdrawn from the warehouse, the merchandise from other—two other bonds had been withdrawn at the same time. They are number 558 and 559. Up to this time, there had been no weights taken by the customs department which was to establish the basis of the liquidation and the three bonds were loaded into cars for forwarding to Sacramento, where the wool plant existed. As the process of loading carried on, the cars were rolled over a track scale and those railroad weights were used to establish the liquidated figure. When it got down to the last few bales in the three bonds, it was an overlap from one bond to the other, equivalent to these 38 bales that we are discussing and that tag for that last car was charged against warehouse entry 557. That is the manner in which that overweight occurred.

He stated that the importer did not receive an additional 38 bales and that one of the other entries appeared short to the liquidating clerk, and the invoice weights were used in liquidating it. As a result, the importer had to pay duty on 38 bales more than it received.

According to the examiner's notation on the invoice, the percentage of clean content of the wool was found to be 28.6 percent. The witness Binder testified that it did not occur to him that the difference between the entered weight and the weight used on liquidation might be due to a difference in the percentage of clean content, since, in his experience, it seldom ran more than 30 per centum.

At the conclusion of the case, counsel for the respective parties stipulated that the invoice weights were the correct weights of the wool covered by the within entry.

The chief question before us is the timeliness of the protests herein. Protest No. 183373–K/78871 was not filed until September 30, 1949. Even under plaintiff's theory of the case, this protest must be dismissed. As a claim that the duty was assessed on excess weight and as a challenge to the legality of the liquidation, it is untimely, since not filed within 60 days after the effective date thereof, and, as a protest against the collector's refusal to liquidate or reliquidate or post a notice, it does not lie. *Gallagher & Ascher* v. *United States*, 21 C. C. P. A. (Customs) 313, T. D. 46832; *Wood & Selick, Inc.* v. *United*

---

[1] Although the amount of duty due according to the liquidation was less than the amount set forth in the entry, apparently the amount deposited was even less.

*States*, 24 C. C. P. A. (Customs) 355, T. D. 48804; *Hiram Walker & Sons, Inc.* v. *United States*, 25 C. C. P. A. (Customs) 189, T. D. 49293, affirmed on rehearing, 26 C. C. P. A. (Customs) 121, C. A. D. 4; *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147; *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164. The Government's motion to dismiss is granted as to protest No. 183373–K/78871.

Protest No. 183372–K/78870 was filed on March 2, 1949. While it included a request that the liquidation be set aside in order to permit the filing of a protest, it was treated by the collector as a protest and brought to his attention the claim that duty had been assessed on excess weight. It is, therefore, sufficient as to form. Plaintiff claims that it is timely on the ground that it was filed within 60 days after the collector made the details of the liquidation available to the importer.

Reliance is placed upon *Wong Sang Man* v. *United States*, 27 Cust. Ct. 248, C. D. 1379. That case involved a San Francisco entry which was liquidated, and a notice of liquidation posted, on July 7, 1948. According to testimony quoted by the court in its decision, the practice was for liquidated entries to be handed over to the warehouse division for the purpose of copying the liquidated figures into the warehouse ledger, after which they were sent to room 217 of the customhouse and placed in the proper broker's box or drawer. An employee of the customs broker in that case testified that, after liquidation of the entry involved, she checked the drawer but could not find it and that she inquired at the warehouse division and checked the record room. She made periodic inquiries thereafter but did not obtain the entry until September 13, 1948. Customs employees were called upon to testify, but they did not establish the reason for the disappearance of the entry and the court concluded that "the failure to make the entry available to the plaintiff or his proper representatives was the fault of the defendant or its agents, and was in no way chargeable to the plaintiff." It was held that the liquidation was not complete until the plaintiff had had an opportunity to learn of the facts of the liquidation and that the statute of limitations did not begin to run until that time. The court said (p. 250):

Any reading of sections 505 and 514, *supra*, of the tariff act must lead to the conclusion that the purpose of the notice of liquidation is that the importer or others interested may be apprised of the action taken by the collector and may invoke, if necessary, the provisions of law by which administrative and judicial review of the collector's action may be secured. To be advised only that a liquidation had taken place without an opportunity to learn the actual facts of the liquidation which would enable one to determine his subsequent course of action, would, of course, be a nugatory thing. Section 514, *supra*, requires that a protest filed thereunder shall set forth—

\* \* \* distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto \* \* \*.

No one could set forth "distinctly and specifically" his objection to an action unless he knew what the action was.

Another case involving the question of the timeliness of the protest is *Carey & Skinner, Inc.* v. *United States,* 31 Cust. Ct. 90, C. D. 1549. There, a Niagara Falls entry was liquidated at the port of Buffalo, and notice of liquidation was posted at Niagara Falls on September 15, 1949. It appeared that entries were not always on hand at Niagara Falls when the notices were posted, as they were ordinarily received once a week from Buffalo. It also appeared that a demand for increased duties was made on September 22, 1949, and that the entry must have been in the collector's office at Niagara Falls at that time, since the demand was prepared from the entry papers. Moreover, the broker admitted that when he received the notice of September 22, 1949, he would have had ample time to file the protest, had he had authority from the shipper to do so. The court concluded that the failure to file the protest within 60 days after liquidation was not due to any delay on the part of customs officials in furnishing the papers, stating that it was not clearly established that the entry papers were unavailable for inspection when the notice was posted; that there was no evidence that the plaintiff or its agents attempted to find the papers at the time the notice was posted; and that it did not appear that due diligence was exercised.

In the course of its decision, the court also pointed out (pp. 94–95):

As a general rule, ignorance of the existence of a cause of action does not nullify the statute of limitations, particularly where the facts may be ascertained by inquiry or diligence. Even fraudulent concealment will not nullify the statute if the failure to discover the cause of action is due to plaintiff's own negligence or lack of diligence, or where the cause of action is known or there is a presumption of knowledge thereof. 54 C. J. S. 216–222; 34 American Jurisprudence 186–193; *Wood* v. *Carpenter,* 101 U. S. 135; *Felix* v. *Patrick,* 145 U. S. 317; *Curtis, Receiver, etc.* v. *Connly,* 257 U. S. 260.

In the instant case, the circumstances are analogous to those in *Wong Sang Man* v. *United States, supra.* The same collector's office and the same procedure are involved. Here, also, the bulletin notice of liquidation was posted, but the entry papers were not placed in the broker's drawer nor were they produced by customs employees although periodic inquiries were made. It is true that the ledger clerk who had charge of such entries was deceased at the time of the trial, but the Government did not call other customs employees who might have offered an explanation as to how the papers could have been obtained by the broker. In our view, plaintiff has established *prima facie* that the failure to make the entry papers available was the fault of the defendant or its agents and was not chargeable to the plaintiff, and that diligent inquiry was made. It

further appears that plaintiff could not have ascertained that it had a cause of action and could not have prepared a proper protest until it had examined such papers. The Government states in its brief that a copy of customs Form 7505, attached to the official papers, shows that a notice was mailed to the plaintiff on December 3, 1948, advising of the amount of duty due on this shipment. This document is not in evidence nor does it show on its face that it was mailed to the plaintiff on December 3, 1948, or at any other time.

On the record presented, we hold that an opportunity to be apprised of all the facts was not afforded the plaintiff or its representatives until February 15, 1949, and that the liquidation was not complete until that time. Consequently, the protest filed on March 2, 1949, was timely. The motion to dismiss the same is denied.

On the merits of the case, in view of the evidence presented and the stipulation of counsel, we find that the invoice weights of the wool are correct. Since plaintiff has not questioned the percentage of clean content found by customs officials nor offered any evidence in regard to it, we hold that duty should be assessed on the basis of the invoice weights and the percentage of clean content found by customs officials. The protest filed on March 2, 1949, is sustained, and the collector will be directed to reliquidate the entry and make refund in accordance with this decision.