(C.D. 2632)

GENERAL PETROLEUM CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 21, 1966)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Glenn E. Harris,* trial attorney), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of crude petroleum, topped crude petroleum, or fuel oil derived from petroleum (including fuel oil known as gas oil), imported during the calendar year 1951 or the calendar

year 1952 prior to October 11, 1952, from countries other than the Kingdom of the Netherlands. It was assessed with internal revenue tax at ½ cent per gallon under the provisions of section 3422 of the Internal Revenue Code of 1929, as modified. It is claimed, among other things, that the merchandise is subject to tax at only ¼ cent per gallon under said section by virtue of the trade agreement with Venezuela, T.D. 50015, and the General Agreement on Tariffs and Trade, T.D. 51802. The parties have submitted a stipulation, quoted, *infra*, on the substantive issue. The dispute involves the timeliness of the protests and the effect of proceedings heretofore had.

Long before the hearing of this case in Los Angeles on March 9, 1965, defendant submitted written motions, each supported by a memorandum, for orders dismissing these protests on the ground that they were not filed within 60 days after liquidation. In the accompanying memoranda, counsel for the defendant pointed out the consumption entries were stamped "Liquidated Dec 30 1953 Los Angeles Calif," and that the protests were dated March 31, 1954, and were stamped by the collector at Los Angeles showing receipt on April 9, 1954.

In reply to defendant's motion to dismiss, plaintiff submitted a memorandum, and an affidavit of Joseph A. Goodyear, Esquire, an attorney associated with plaintiff's counsel, sworn to on March 27, 1964. According to this affidavit, Mr. Goodyear visited the customhouse in Los Angeles on January 21, 22, and 25, 1954, for the specific purpose of checking the current status of a list of entries including those involved herein. He checked the posted bulletin notices of liquidation and requested customhouse employees to furnish him with the entries on the bulletin notices and also those which he did not see, which included those now before us. He was informed that such entries could not be furnished because the office was unusually busy. Mr. Goodyear repeated his request on January 22d and 25th, and eventually an attempt was made to locate the requested entries, but none could be found in the regular files. Some were located in the refund section, but the three entries in this case could not be found. Mr. Goodyear returned to Los Angeles on March 8th, and, after conferring with the assistant collector, the entries were made available for inspection. These protests were filed within 60 days thereafter.

On the basis of these papers and those in the official file, an order was entered on April 1, 1964, denying the motions to dismiss the protests.

At the hearing at Los Angeles, defendant renewed its motion to dismiss the protests for untimeliness and moved to vacate the order of April 1, 1964. The official papers were offered and received in evidence without marking and counsel for the defendant claimed that they established *prima facie* the dates of liquidation and protest.

Plaintiff introduced no evidence but relied on the order of April 1, 1964. The case was submitted, subject to the motion to vacate the said order, though the hearing judge indicated that in his opinion the order settled the matter unless defendant introduced evidence to warrant setting it aside.

Defendant's position is that, notwithstanding the order of this court of April 1, 1964, the burden rested on plaintiff to prove in open court the timely filing of the three protests and that, until it introduced *prima facie* proof, it was not incumbent upon defendant to produce any evidence "in refutation of plaintiff's *ex parte* allegations of timely filing." It says this court really held only that an issue of fact existed making the matter improper to act on by motion. Plaintiff claims that the order of the court must be respected; that it states affirmatively that the protests were filed within 60 days of the date when the entry papers were available for inspection; that a protest so filed is valid, and that the practice of making such determination by motion is of long standing and was invoked by the defendant in this case.

It is well settled that the Customs Court does not have jurisdiction on the merits of a case where a protest is untimely; that a question of jurisdiction may be raised at any time during the pendency of an action, and that the court is under a duty to raise the question *sua sponte. United States* v. *Robinson & Co.*, 12 Ct. Cust. Appls. 145, T.D. 40062; *James Akeroyd & Son* v. *United States*, 19 CCPA 249, T.D. 45341; *United States* v. *Klytia Corporation*, 29 CCPA 109, C.A.D. 178. The court does have, and has many times exercised, the power to determine whether a protest is timely. *United States* v. *Brown, Durrell & Co.*, 127 Fed. 793 (T.D. 25074) ; *Standard Oil Co.* v. *United States*, 1 Cust. Ct. 78, C.D. 22; *Wong Sang Man* v. *United States*, 27 Cust. Ct. 248, C.D. 1379; *Carey & Skinner, Inc.* v. *United States*, 31 Cust. Ct. 90, C.D. 1549; *Hoyt, Shepston & Sciaroni* v. *United States*, 34 Cust. Ct. 77, C.D. 1682; *Inter-Maritime Forwarding Co., Inc.* v. *United States*, 41 Cust. Ct. 433, Abstract 62548.

As a matter of substantive law, it is the holding of this court that the 60-day protest period does not run if the importer or his representative is diligently seeking access to the entry papers but is unable to obtain it. *Hoyt, Shepston & Sciaroni* v. *United States, supra; Wong Sang Man* v. *United States, supra; The Lansdowne Distillery* v. *United States*, 39 Cust. Ct. 190, C.D. 1925. While it is the practice to dismiss a protest on motion when the Government, as here, shows only that over 60 days ran from the liquidation to the protest, it must follow that facts established in addition to these dates may and do at times show that the protest is timely. How such additional facts should be put before the court procedurally is the question at issue here.

When the court entered its order of April 1, 1964, it had before it

in the official papers (a) the date stamps showing the protests were received more than 60 days after liquidation, (b) reports on customs Form 4297, dated July 19, 1954, signed by then deputy collector Townsend, stating the protests were timely, and (c) a letter dated October 25, 1963 (hereinafter referred to as the Hoffnung letter), signed by Mr. Hoffnung, an acting assistant collector, stating that because the papers reflected receipt of the protests over 60 days after liquidation, they were not timely. The letter further recited that an affidavit and proposed stipulation had been submitted but the latter could not be "certified," and that the Form 4297 reports were in error in stating the protest were timely. There was no affidavit in support of the motion. We have already recited the contents of plaintiff's affidavit.

There was nothing before the court on April 1, 1964, to advise that an issue of fact existed here. The deputy collector reported that the protests were timely. He cannot be considered a mere volunteer in making the reports he did on customs Form 4297. The practice of stating to the court whether the protest is timely is not statutory, it is true, but it had been required for a long time by administrative practice. T.D. 25996 of January 25, 1905, read in part as follows:

Each letter of transmittal to the Board of General Appraisers shall show whether or not the protest was filed within the statutory ten days * * *.

The reports on Form 4297 were made after 90 days and, therefore, could have been excluded if objected to. *Oakland Food Products Co. et al.* v. *United States*, 32 CCPA 28, C.A.D. 281. But, having been referred to by the Government in its memoranda in support of the motions, and not having been objected to, the court may in its sound discretion consider them. *W. T. Grant Company* v. *United States*, 38 CCPA 57, 63, C.A.D. 440. (The official papers were later offered in evidence at the trial and again were not objected to.)

The Hoffnung letter, stating that the protests were untimely, was merely conclusory and appeared to mean that Mr. Hoffnung thought the lapse of over 60 days between liquidation and protest was conclusive against the plaintiff. Though the affidavit put before him could not have been the Goodyear affidavit that plaintiff submitted to the court, because that had not been then executed, counsel for plaintiff later stated to Judge Wilson, in open court, without contradiction, that the information in the Goodyear affidavit was available to the Government long before it made its motion to dismiss. The Hoffnung letter certainly established *prima facie* that plaintiff had sought to obtain Government acquiescence in some sort of fact recital. The absence of any affidavit with the motion indicated that the Government did not intend to challenge plaintiff's version of the facts, and thought the dates of liquidation and protest conclusive whatever the explanation

might be.   Had the Goodyear affidavit in any way surprised the Government—which it has never said—it could have taken appropriate measures to counter it, as by motion for rehearing.

Having shown that the papers before the court did not disclose the existence of a dispute of fact, we now return to them to consider what they did disclose.   The date stamps, if they stood alone, would prove *prima facie* that the protests were untimely.   But a customs official, filling out Form 4297 as his duties prescribed, determined and advised this court that they were timely.   Our decisions already cited are authority that these two records are not necessarily in conflict.   Mr. Hoffnung, over 9 years later, said the protests were untimely.   But this statement is not under oath, does not give any reason except the insufficient one of the lapse of time between liquidation and protest, does not show that Mr. Hoffnung either had personal knowledge of the transactions or had any investigation of them made on his behalf, and would seem to be no more than an *ex parte* allegation of an ultimate conclusion.   Of course, a mistaken official record can be corrected, but the Hoffnung letter, though doubtless executed in all good faith, hardly constitutes the proper way.   Deputy Collector Townsend may well have investigated the facts and determined that they were as plaintiff now alleges.   There is a presumption his contemporary certification is correct, which an *ex parte* assertion by another official, many years later, does not suffice to refute.

The reliance on the official papers to establish, unsupplemented, that the protests were not timely, would have been mistaken even had there been no Goodyear affidavit.   The court, with an unexplained and uncorrected contemporary official record that the protests were timely, the Hoffnung letter, and the Goodyear affidavit before it, had a right to assume and did assume that the facts not only were undisputed but were as the affidavit alleged, and that all the dispute was as to the law.   Accordingly, in making the order of April 1, 1964, it intended to rule and did rule that the protests were timely.   It stated its ruling in unmistakable language, reciting in the order, as it did:

* * * it appearing that said protests were filed within sixty days of the date upon which the entry papers were available for inspection by the attorneys for the plaintiff * * *.

The court did not find the existence of any dispute of fact and it did not reserve the resolution of any such dispute for the trial, the statements in defendant's brief to the contrary notwithstanding.

The trial on the merits commenced before Judge Wilson on March 9, 1965.   At that time the issue of timeliness of the protests had been decided by the former order.   Judge Wilson was willing to go into the matter again, and indeed he himself advised defendant to move to vacate the order.   If a mistake had been made, it could then have

been corrected. Defendant, however, refused to introduce any evidence. It claimed the proceedings it itself had initiated on the motion to dismiss were mere nullities. It objected to not having had a chance to cross-examine the affiant, Mr. Goodyear, although it had itself expected the court to act on a document not even sworn to.

The court is of the opinion that the order of April 1, 1964, established the law of the case to at least the degree that a party seeking to retry the issue it decided would have to move to vacate it and, being the moving party, would have to introduce evidence to show that the order should be vacated. No such evidence having been offered, what would have sufficed to get the order vacated is a moot question which need not be gone into. Defendant's desire to cross-examine the affiant, Mr. Goodyear, does not relieve it of its burden. We note, however, that neither in oral argument before Judge Wilson, nor in the briefs, did counsel for defendant say that the Government is in possession of evidence tending to show that the Goodyear affidavit is false in any material respect.

On the merits, counsel have submitted these cases on a stipulation reading as follows:

IT IS HEREBY STIPULATED AND AGREED that the merchandise assessed with internal revenue tax under Sec. 3422, I.R.C. of 1939, as modified, at ½ cent per gallon on the protests enumerated above, consists of crude petroleum, topped crude petroleum or fuel oil derived from petroleum (including fuel oil known as gas oil) imported during the calendar year 1951 or the calendar year 1952 prior to October 11, 1952, from countries other than the Kingdom of The Netherlands, that said merchandise and all the material facts with respect to the importation and assessment of tax thereon are similar in all material respects to the merchandise and the material facts with respect to its importation and the assessment of tax thereon which were the subject of *Esso Standard Oil Company* v. *United States*, C.D. 2314, 48 Cust. Ct. Reports 54, wherein it was held that the merchandise there involved was assessable with an internal revenue tax of only ¼ cent per gallon under Sec. 3422, I.R.C. of 1939 as modified by T.D. 50015 and T.D. 51802.

IT IS FURTHER STIPULATED AND AGREED that the record in C.D. 2314, *supra*, be incorporated with the record in these protests and that the protests be submitted on this stipulation, each and every protest being limited to 30 per centum of the quantity of merchandise imported and abandoned as to the remainder.

IT IS FURTHER STIPULATED AND AGREED that if any of the three protests enumerated above refer to any merchandise that was not imported during the calendar year 1951 or the calendar year 1952, prior to October 11, 1952, it may be deemed abandoned.

In view of this stipulation and on the authority of the decision cited, we hold that the commodities herein in the amount of 30 per

centum of the quantity imported are properly subject to internal revenue tax at ¼ cent per gallon under section 3422 of the Internal Revenue Code of 1939, as modified. As to the remainder of the merchandise, the protests, having been abandoned, are dismissed. Judgment will be rendered accordingly.