(C.D. 2697)

GENERAL PETROLEUM CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Dated June 2, 1966)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

Before OLIVER and NICHOLS, Judges, and WILSON, Senior Judge

NICHOLS, Judge: The Government moves for rehearing and reconsideration of our order and judgment entered March 21, 1966. It seeks a dismissal for lack of jurisdiction or, alternatively, that the case be restored to the calendar for further testimony. We refer to our published opinion, *General Petroleum Corp.* v. *United States*, 56 Cust. Ct. 249, C.D. 2632, for recital of the main facts, as this case has generated far too many words already to justify repetition by us. Further facts are mentioned as they are deemed pertinent. The supporting affidavit of Government counsel, with exhibits, discloses much not previously known to us as to the history of this litigation.

The jurisdictional point appears to be that, since we attach so much credence to the Goodyear affidavit, we should conclude from it that a bulletin notice was not given of the liquidations on the day they were made. Since the regulations, section 16.2, so require, and conformity to the provision is essential to a valid liquidation, we should have dismissed the protests as premature. Whether or not this point is valid as to the record that was before us, the affidavit now discloses that evidence exists and could be produced that in 1953–54 Regulation 16.2 was invariably obeyed in the Los Angeles customhouse with respect to the prompt posting of liquidations. Mr. Goodyear does not allege the contrary. He says that when he checked the posted bulletins on three occasions some 3 weeks and more after liquidation of these entries they "appeared to be unliquidated." That is, he did

not see them posted. He does not recount any investigation or inquiry by him as to whether the posting was or was not made as required on the date of liquidation. The notices as posted have been destroyed. The original protests, it is true, alleged the postings were not timely, but such allegations are not evidence to overcome the presumption that the official measures were regular.

Next, defendant argues we should not attach credence to Mr. Townsend's certification that the protests were timely. The original protests of March 31, 1954, alleged not only that the notices were not timely posted but also, that the entry was not made available to the "protestant" until March 8. These allegations by a responsible law firm (Sharretts, Paley & Carter filed the protests on their client's behalf) should have received notice in any well ordered customhouse. Statements should have been taken while memories were fresh, and pertinent records, as e.g., the bulletin notices, preserved. If this was not done—as apparently was the case—it tends to lend credence to Mr. Goodyear's suggestion that the customhouse was overwhelmed by its work volume and things were badly disorganized. That no statements were taken respecting the protest claims is inferrible from the fact that the diligent efforts of Government counsel located none. Still, the reports on Form 4297, by Deputy Collector Townsend, that the protests were timely could not properly have been made without some substantiation. Possibly he did not want to make a record detailing anyone's dereliction, but did want to protect the importer in its right to judicial review and found that the facts so justified. At any rate, the report in the circumstances could not have been an inadvertence. Its conclusory character is not fatal: the presumption of official regularity compels us to suppose Mr. Townsend based it on facts ascertained by him. The Government affidavit does not advise us of any attempt to locate or interview Mr. Townsend, or even whether he is alive or dead. The only thing to discredit him, and Goodyear, not previously before us, is a statement attributed to the retired assistant collector, Russell A. Williams, that he has "no recollection" of Mr. Goodyear's having called his difficulties to his attention, or of Mr. Townsend making any inquiry regarding any alleged unavailability of entry papers to Mr. Goodyear. With all respect to Mr. Williams, who was a fine customs officer, if he appeared at a rehearing and testified along those lines, it would be of virtually no help to the court. A more pertinent inquiry would be what notice he took of the protest allegations. The same may be said of evidence by clerks who worked in the customhouse in 1954 and cannot recall any question "raised by Mr. Goodyear * * * regarding the location of entry papers." This in face of a record disclosing the three formal protests!

This was a large customhouse, handling a great volume of business. Los Angeles is, after New York, the second port. The nonoccurrence of any event cannot be shown by the nonrecollection of it on the part of the few still active who may or may not have played a part and did not necessarily have duties to perform in the matter.

Counsel would have us believe that the collector forwarded the protests to the court without investigating the matter alleged therein, as section 515, Tariff Act of 1930, required, though it related to facts peculiarly discoverable by him, proceedings in his own customhouse. And it is suggested that Mr. Townsend made a report to this court without verifying the facts he stated therein. Thus, where Mr. Goodyear's affidavit saddles one wrong on the collector's forces, the Department of Justice now adds two more. The reputation of the Bureau of Customs would appear to fare better at the hands of its opponent than its friend. While the evidence proposed to be offered does not justify the fact conclusions Government counsel would have us draw from it, neither, if it did, would it be competent for the Government to rebut the presumption of regularity of its own officer's actions in this manner.

Next, the Government asserts that Mr. Goodyear's affidavit does not establish due diligence. It means, apparently, that even if the papers were not made available for inspection to Mr. Goodyear at the times he says he requested them, this does not stop the running of limitations unless he exercised "such diligence in seeking recourse to the entry papers as is required under decisions such as *Wong Sang Man* v. *United States*, 27 Cust. Ct. 248, C.D. 1379." Reading of this, the only specifically cited decision, leaves the court still mystified as to what diligence the Government holds is required, a problem not considered in the *Wong Sang Man* case. It appears from the affidavit and exhibits that the plaintiff had a representative, a Mr. L. J. Moore, who had offices at Terminal Island, Calif. (which we may take judicial notice is in Los Angeles, Calif., or adjacent thereto). Mr. Moore sometimes corresponded with the Los Angeles Collector of Customs on customs matters, even to the point of protesting the liquidation of some entries, not the ones at bar. If we understand the Government conception of "due diligence" it would tend to make it impracticable for any attorney to handle customs protests in any district except the one where his office was. We do not agree that to display "due diligence" an out-of-town attorney must either camp on the collector's doorstep during the whole 60-day period or delegate his duties to a local person. We do not think the existence of Mr. Moore has any bearing on the case.

The other evidence the Government would rely on in the event of a rehearing, to show lack of due diligence, is that another entry, not

the one at bar, was protested only after 60 days had run. In that case, there was a different plaintiff but the same law firm. Defendant says this established that "This court should not presume, as it apparently has, that the firm representing the plaintiff was invariably timely in the filing of protests on behalf of its clients * * *." This court never did so presume. Suppose—as we have no reason to suppose—that this firm did not display due diligence on behalf of another client, this does not establish any reason why the instant client should be penalized.

The motion and supporting papers perform a valuable service in assuring that the case did not turn on procedural gamesmanship. The Government has now told us what it could have put before the court if it had chosen to do so, instead of refusing as it did because of dissatisfaction with the burden of going forward placed upon it. In reviewing the material, we have assumed that the customs officers mentioned would have testified what it is alleged they stated to Mr. Harris. We have further assumed no erosion by cross-examination, although Mr. Williams would seem at least as vulnerable to it as Mr. Goodyear. And we repeat the observation that the certification by Mr. Townsend, unrefuted and unexplained, that the protests were timely, must stand. The presumption of regularity of official actions requires us to suppose he investigated the protest allegations. No other or conflicting investigation has been found and we must suppose there was none. Therefore, the Goodyear affidavit was unnecessary and it is irrelevant that the Government does not think it true. The matter proposed to be brought forward, if presented in competent form at a rehearing, would not justify a determination that the court did not have jurisdiction or that the protests were not timely filed. Therefore, the order of the court will deny the motion for rehearing.